## W. B. TURNER v. WILLIAM N. CRANE ET AL.

### Decided October 13, 1898.

**1. Sheriff's Deed—Presumption in Aid of.**

It will be presumed that an execution which can not be found follows the judgment, rather than that it issues against a person not named therein, where the execution docket fails to give the names of the parties, and the sheriff's deed, which in every particular but the names correctly describes the judgment, is consistent with the conclusion that the execution issued against either person, since it gives the name of the party described in the judgment in the habendum clause, and the other name in the granting clause, especially in view of the long assertion of claim under the sheriff's deed, and the apparent recognition of it as a conveyance of the judgment debtor's interest in the property in his subsequent conveyances.

**2. Same—Description of Land.**

The description in a deed of the land it conveys as 200 acres off the S. end of 800 acres known as the Red Bluff league is sufficient where the south line of the league is a straight east and west line.

**3. Same—County Not Named.**

A sheriff's deed is not void on its face for uncertainty in the description of the property as "200 acres of land off the S. end of 800 acres of land known as the "Red Bluff League" where it states that the sheriff of Harris county levied upon it, and that the sale was made in that county.

APPEAL from Harris. Tried below before Hon. JOHN G. TOD.

*E. P. Turner,* for appellant.

*Smith & Baldwin,* for appellees.

WILLIAMS, ASSOCIATE JUSTICE.—William N. Crane, Redick Crane, and William Butler, who are among the appellees, brought this action of trespass to try title against certain defendants, who are also appellees, and against the appellant, W. B. Turner, to recover certain land, consisting of 800 acres, a part of the headright league in Harris County granted to W. P. Harris, called the "Red Bluff League," less a tract of 137 acres excepted by the petition from the 800 acres tract. The description given of the 800 acres shows that its northern and southern boundaries have

straight lines running east and west; that its western boundary is a straight line running north and south, and that its eastern boundary is Galveston Bay, the course of which at that place is not shown by the record. The 137 acres excepted from the tract is described so as to show that it lies in the southeastern corner.

The appellant Turner, by his pleadings, claimed a tract of 200 acres off of the south end of the 800 acres tract, and as to that pleaded not guilty, and alleged his title specially. The other defendants also pleaded not guilty. Upon the trial it appeared that the league, of which the 800 acres is a part, was granted to W. P. Harris, who, on December 11, 1840, conveyed the 800 acres, describing it as it is described in the petition, to Elijah Hunnings. On the 1st day of November, 1838, in the County Court of Harris County, in a cause entitled McCaskill & Dobie, by McCaskill, surviving partner, v. Elijah Hunnings, a judgment was rendered in favor of plaintiffs against the defendant for $132.06 principal and $24 interest, and costs of the suit. The appellant, Turner, claims the 200 acres under a sale under execution issued upon this judgment, the evidence of which is as follows: The original execution with its indorsements were lost, and could not be produced at the trial. The execution docket of the District Court was produced, in which was found an entry which does not, so far as the record shows, give the title of any cause or the name of any party, and which is otherwise as follows:

"Judgment Nov. 1st, 1838.   Debt $132.06.   Interest $24.20— $156.26.   County Clerk $10.   Sheriff $7.75.   Atty. $5.00.   Clk. Lubbock $2.25.

"Issued and delivered to the sheriff of Harris County October 24, 1843, and returned April 1, 1844, as follows:

"Levied on 200 acres of land and sold to J. A. Southmayd the 6th of February, 1844, for 16 2-3 cents per acre, for particulars see execution."

Appellant also produced the record of a deed dated February 6, 1844, duly acknowledged and recorded February 17, 1844, from the sheriff of Harris County to J. A. Southmayd. This deed properly describes the judgment just referred to, except that it states that it was rendered against Elijah Hemmings. It further recites that an execution was issued thereon on the 11th day of November, 1838, from the office of the county clerk, and was returned stayed by order of plaintiff; that on the 17th of August, 1843, the papers in said case were sent up to the clerk of the District Court for said county for execution to issue thereon; that on the 24th of October, 1843, an execution was issued from said office commanding the sheriff to levy on the property of Elijah Hemmings sufficient to satisfy the judgment; that the sheriff proceeded in accordance with the writ to levy upon "200 acres of land off the S. end of 800 acres known as the Red Bluff league, being a part of a tract sold by Wm. P. Harris to the said Hemmings;" that the sheriff sold this land on the 6th day of February, 1844, after having caused it to be appraised, giving the appraisement; that it was purchased by J. A. Southmayd, giving the amount of his bid, which was two-thirds of the appraisement, and that

the purchase money was paid by Southmayd, and the deed proceeds to convey the land to the said Southmayd, and closes with the following: "To have and to hold the same to himself, his heirs and assigns forever, in as full, good, and perfect a manner and estate as the said Elijah Hunnings above mentioned had at or after the rendition of the above cited judgment, in said premises became liable to satisfy the same with damages and costs of court. Dated, February 6th, 1844."

On the 17th of February, 1849, Southmayd conveyed the 200 acres, by the same description as that given in the sheriff's deed, to Robert Brewster, and the deed was duly recorded the same day. On the 31st of May, 1889, Robert Brewster conveyed it to William R. Baker by same description, this deed being also recorded the same day. Baker has paid taxes on this land since the date of his deed, and appellant claims under his will. The evidence further shows that Elijah Hunnings, on the 12th day of April, 1846, conveyed to James Morgan the 137 acres mentioned in plaintiff's petition. Hunnings subsequently died, devising his estate to his daughter, Sarah Ann Crane, the wife of Whittington Crane. The will was probated in 1851. The plaintiffs are the heirs of Sarah Ann and Whittington Crane. Sarah Ann Crane and her husband, on the 13th of August, 1860, executed to John R. Harris a bond for title, recorded September 28, 1860, by which they agreed to sell to him 800 acres of land out of the W. P. Harris league, less 200 acres sold to Southmayd and 137 acres sold to James Morgan, leaving 463 acres, the same conveyed to Elijah Hunnings by deed, the record of which is referred to. On the 14th of January, 1861, Crane and wife executed to John R. Harris a deed recorded March 22, 1861, conveying the following land: "800 acres of land out of the W. P. Harris league on Galveston Bay, less 200 acres sold by E. Hunnings to J. A. Southmayd and 137 acres sold by him to James Morgan, leaving a balance of about 463 acres hereby conveyed, being the same tract conveyed by W. P. Harris to Elijah Hunnings by deed in volume F, page 565, and conveyed to Sarah A. Crane by said Elijah Hunnings by his last will and testament duly probated in the county of Harris."

John R. Harris subsequently conveyed to Mrs. Rebecca Williams the 800 acres, excepting 200 acres sold by E. Hunnings to J. A. Southmayd and 137 acres to James Morgan. The other defendants besides Turner have title under Mrs. Williams to the land conveyed by these deeds. By the judgment of the court below the plaintiff and those defendants were adjudged to have title to all land except the 137 acres not sued for, Turner's title under the sheriff's sale being held void. The court in its findings of fact found that the execution referred to was issued against Elijah Hemmings, and that his land was sold, and by conclusions of law held that the sale was insufficient to pass the title of Elijah Hunnings.

*Opinion.*—On the statement given of the case it is plain that if the execution sale, under which Turner claimed, was valid to pass Hunnings' title to land sold, plaintiff should have recovered nothing; for the other

muniments of title offered in evidence show that their ancestress had no title to any other part of the tract at the time of her death. Two objections are made to the execution sale. The first is, that the execution having been issued against Hemmings, and the land having been sold as the property of Hemmings, and not of Hunnings, no title passed. If the court's conclusion of fact, that the execution was issued against Hemmings, is correct, it may be conceded that the result contended for would follow. But it will be seen that the execution is lost, and its contents are to be inferred from the other evidence offered. The entry on the docket does not show against whom the writ issued. The court's conclusion that the execution issued against Hemmings is evidently based upon the recitals of the sheriff's deed. The court at the same time concluded that the execution was issued upon the judgment found in the record. The sheriff's deed, considered alone, is consistent with the conclusion that the writ issued either against Hemmings or Hunnings, because it gives both names. In every particular but the names it describes the judgment with great accuracy. We think the more rational conclusion is, that the execution issued correctly against the party against whom the judgment was rendered. There is evidently an error in one part of the deed or the other. Either the sheriff or the recorder might easily have made it where the strokes of the pen made in writing the two names are so nearly identical. The deed recites that the judgment was against Hemmings and that the land was conveyed to Hemmings, which clearly indicates that the error was in substituting that name for Hunnings.

We therefore think it clear that it should be held that the execution followed the judgment rather than that it issued against a person not named in that judgment. The presumption is that the clerk in issuing the execution performed his duty accurately, and as the execution was evidently issued upon this judgment, as the court properly states in its conclusion, it should be held that the execution was against the proper party. In order to hold this it is only necessary to treat the names where first written in the sheriff's deed as a clerical error, and to accept as correct the name as given in the habendum clause of the deed. It is urged that where there is a conflict between the granting clause and the habendum clause of the deed, the former should prevail. This is doubtless the correct proposition where it has application; but the question here is simply one of fact, namely, against whom did the execution issue? If it issued against Hunnings and his property was sold, the purchaser acquired title by his bid and by the payment of the purchase money, and the sheriff's deed was not at all necessary to that title. That deed is to be regarded as evidence tending to show the existence of the execution, the levy, and sale, and since, as we have before shown, it is consistent with the conclusion that such execution was against the defendant against whom the judgment upon which that execution issued was rendered, that conclusion is the proper one to adopt. This is also strengthened by the recitals in the other deeds above set out.

The next objection is that the land sold is not sufficiently described.

It is first contended that the levy was upon 200 acres without further description, this contention being based upon the clerk's memorandum upon the execution docket. The execution docket does not so state, but refers to the execution for particulars. To see what land was levied upon and sold we must refer to the sheriff's deed, and while the description there given is quite general, we think it is sufficient. It sufficiently points to the 800 acres tract and indicates how the 200 acres are to be taken from it and identified. The description in the petition, which the statement of facts admits to be correct, shows that the south line of the 800 acres tract is a straight line running east and west and the 200 acres sold are to be taken from the south end of that tract. This makes the south line the base upon which the other boundaries are to be formed, and it requires only the ministerial act of a surveyor to identify the 200 acres with that line as its southern boundary. The description seems to us to be as complete as if the sheriff had indicated that a line should be run east and west across the survey far enough north of the south boundary line to include 200 acres; this would give all the boundaries of the tract, and a better description could hardly be given without an actual survey.

We have examined all of the authorities referred to by appellees' counsel, and many others, and find none which conflict with this conclusion. Since it is apparent that plaintiffs have no title to any part of the land sued for, the judgment will be reversed, and judgment will be here rendered that they take nothing by their suit.

*Reversed and rendered.*

### ON MOTION OF REHEARING.

WILLIAMS, Associate Justice.—In an argument accompanying the motion it is strongly and plausibly urged that this court, in reversing the finding of the lower court that the execution issued against Hemmings and not Hunnings, violated the rule of appellate courts that a finding of fact of the trial court will not be disturbed when there is evidence to support it. Our conclusion was, that there was no sufficient evidence to support the finding in question. The only conflict in the evidence was in the different recitals in the sheriff's deed. Our view of the question of fact arising was that but one conclusion could be legitimately drawn from such evidence, which was the one which rendered the act of the clerk in issuing the execution consistent with his duty under the law, and which supported his action under the presumption that such officers perform their duties correctly. This view was strengthened by the lapse of time, the long assertion of claim under the sheriff's deed, and an apparent recognition of it as a conveyance of Hunnings' interest in the deeds under which plaintiffs themselves claimed. The only question was as to the inference to be drawn from given facts, and we held, and still hold, that they admitted of but one just conclusion.

It is further urged that we were in error in holding the description of the land to be sufficient. For the court to reject the deed, in the absence

of extraneous evidence showing that the land in question can not be identified by an application of the descriptive particulars to the ground, the conclusion must be reached that it is void on its face for uncertainty. The description is as follows: "200 acres of land off the S. end on 800 acres of land known as the Red Bluff league, being a part of the tract sold by Wm. P. Harris to said Hemmings."

We have already held that the name *Hemmings* should be treated as *Hunnings*.

One of the objections urged is, that the description does not state the county in which the land is situated. The deed states that the sheriff of Harris County levied upon it by virtue of an execution issued to him, and that the sale was made in that county. He could lawfully levy upon and sell land nowhere else than in that county. No practical business man, seeking in good faith to find land thus described would, in our opinion, think of searching elsewhere. Why should a court indulge in speculations that the land might possibly lie elsewhere, when to do so would violate the presumption that officers act lawfully? Wright v. Watson, 11 Humphreys; Freem. on Ex., sec. 287. Courts have some times, in pointing out the uncertainties of descriptions, mentioned the fact that the county in which the land lay was not stated; but we think it very clear that such an omission, by itself, furnishes no ground for holding a levy void. Assuming, then, that the land upon which the sheriff intended to levy was in Harris County, can the court say, upon an inspection of the return, that it can not be found by the use of the information given? The deed mentions a league, a tract of 800 acres, and a tract of 200 acres. The 200 acres tract is a part of the 800 acres, and it is equally clear, though the language is awkward, that the 800 acres tract is a part of the league, because it could not be, as the language literally states it is, known as the league. The league could only be referred to to show that it contained the 800 acres. Can the court say that the league in Harris County known as the Red Bluff league could not easily be found? The petition in this case virtually states that the Harris league was so known, and the petition, in connection with the statement of facts, shows that the league was thus designated in the deed from Harris to Hunnings. Even if it be assumed that there might have been, in Harris County, two or more leagues thus known, the one meant could be ascertained by the answer to the inquiry, out of which of them did W. P. Harris convey 800 acres to Elijah Hunnings? For this last fact may have been well known and easily ascertained, even if the deed itself could not be had. A tract of land in a league, described as having been conveyed by one person to another, might be as well known as a farm or tract designated by name. If this levy had designated the 800 acres as "the Hunnings tract in the Red Bluff league," no court could pronounce it void on its face without disregarding the adjudged cases. How, then, can it be assumed that the description given of the 800 acres is too uncertain, when the court can not know that persons familiar with the league would not be able to identify the tract conveyed by Harris to Hunnings?

We do not find anything in the record from which we can determine whether the deed from Harris to Hunnings was recorded at the date of the levy or not. Upon examination of the description itself it can not be said that the 800 acres tract was not sufficient to advise purchasers of the locality of the 800 acres. That the land can be identified is left beyond doubt by the deeds offered in evidence.

The question which we regarded as most doubtful was as to the sufficiency of the description of the 200 acres. It is now urged that the description does not state that the tract sold is to be taken from the south end "of" the 800 acres, but "on" it. We fail to see the force of the objection. The land is in either case on the larger tract, and on its south side or end. It is also pointed out that the northern and southern boundary lines of the larger tract are longer than the eastern and western lines, and that hence the ends, properly speaking, are at the eastern and western extremities of the tract. This may be granted; but it does not follow that this inaccuracy of the sheriff, in calling the south side of the tract its south end, should vitiate his levy. The truth remains evident that the land intended lies along the southern boundary of the 800 acres, and is to extend far enough north to include 200 acres within the southern, eastern, and western boundaries, leaving only one line to be run in accordance with a mathematical calculation.

Another ground of the motion presents a question which did not escape our attention in the original decision. The 200 acres sold by the sheriff and the 137 acres conveyed by Hunnings to Morgan conflict and cover partly the same area, and therefore Hunnings, at his death, left unconveyed more than 463 acres, the quantity mentioned in the deed from plaintiff's ancestress to Harris. But that deed conveys by its terms the whole of the 800 acres with the specific exceptions of the two tracts mentioned, and consequently nothing remained to pass to plaintiffs from Mrs. Crane, through whom they claim.

*Overruled.*

Writ of error refused.