MASTERSON IRR. CO. et al. v. FOOTE et al.

(Court of Civil Appeals of Texas. Galveston. Dec. 22, 1913. Rehearing Denied Feb. 19, 1914.)

1. EXECUTION (§ 283*)—EVIDENCE.

Evidence, in trespass to try title, *held* to show that the execution under which land was sold was issued against Elijah "Hunnings," instead of "Hennings."

[Ed. Note.—For other cases, see Execution, Cent. Dig. § 744; Dec. Dig. § 283.*]

2. TRESPASS TO TRY TITLE (§ 11*)—PROOF OF TITLE.

Defendant, in trespass to try title, cannot defeat plaintiff's prima facie title, evidenced by

a deed from the common source, merely by showing that he holds a senior deed from such source, without also showing that the land conveyed to him thereby conflicts with plaintiff's title, but, in case of such showing, plaintiff's title fails as to the part of the land as to which title conflicts.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 14; Dec. Dig. § 11.*]

**3. TRESPASS TO TRY TITLE (§ 6*)—BURDEN OF SHOWING TITLE.**

Plaintiff, in trespass to try title, can recover only upon the strength of his own title, and he cannot recover if the evidence shows that he has title to only a part of the land claimed, and does not show the part to which he has title.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 5–9, 15, 16; Dec. Dig. § 6.*]

**4. TRESPASS TO TRY TITLE (§ 38*)—BURDEN OF PROOF.**

Where the evidence, in trespass to try title, showed that defendant's senior deed to 200 acres from the common source covered at least a part of the land claimed by plaintiff, the burden was upon plaintiff to show what part of the tract claimed by him was not included within defendant's conveyance.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 53; Dec. Dig. § 38.*]

**5. EVIDENCE (§ 460*) — PAROL EVIDENCE — SHERIFF'S DEED—LAND CONVEYED.**

A sheriff's deed on execution for "two hundred acres off the south end of the eight hundred acres of land known as the Red Bluff league being a part of tract sold by H. to H." definitely conveyed 200 acres off the south end of the 800 acres, so that parol evidence to show an intention to convey a different tract is not admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2115–2128; Dec. Dig. § 460.*]

**6. ESTOPPEL (§ 94*)—ESTOPPEL BY CONTRACT.**

The fact that one who had received a sheriff's deed to 200 acres of land subsequently took an acknowledgment of a conveyance of another tract by the owner and read the description in such subsequent conveyance, and knew of the conflict between that and the land conveyed by the sheriff's deed, would not estop him from asserting title under his own deed, as against the subsequent conveyance; it being his duty, as a notary public, to take the acknowledgment when requested by grantor.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 245–247, 276–284; Dec. Dig. § 94.*]

**7. EXECUTION (§ 333*) — RETURN — "NEXT TERM OF COURT."**

The law in force on February 6, 1844, when an execution was issued which required that it be returned before the "next term of court," meant the next regular term of court, so that it was not returnable to the special term.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 1002–1004; Dec. Dig. § 333.*

For other definitions, see Words and Phrases, vol. 5, pp. 4805–4807.]

**8. EXECUTION (§ 333*)—RETURN.**

In view of 2 Gam. Law, pp. 916, 917, authorizing a special term of court, and providing that it shall be deemed the fall term of the district court for the year 1843, and that all process returnable to the fall term should be made returnable to the special term, an execution issued after the date of the regular fall term, and before the passage of the act creating the special term, was not returnable to the special term.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 1002–1004; Dec. Dig. § 333.*]

**9. EXECUTION (§ 60*) — ISSUANCE — OFFICER ENTITLED.**

Under 2 Gam. Laws, 91, Act Jan. 20, 1839, providing that all process theretofore issued by the county courts in which the amount exceeded $100 should be returned to the district court, the clerk of the district court was authorized to issue execution upon a judgment rendered in the county court.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 146, 147; Dec. Dig. § 60.*]

Error to District Court, Harris County; Chas. E. Ashe, Judge.

Action by W. O. Foote and another against the Masterson Irrigation Company and others. Judgment for plaintiffs, and defendants bring error. Reversed and rendered.

Elliott Cage and Baker, Botts, Parker & Garwood, all of Houston, for plaintiffs in error. Maco & Minor Stewart and R. W. Houk, all of Houston, for defendants in error.

PLEASANTS, C. J. This is an action of trespass to try title brought by W. O. Foote and George Locke, who will be hereinafter styled appellees, against the Masterson Irrigation Company, H. Masterson, J. O. Ross, and Ellen B. Ross, said J. O. Ross and Ellen B. Ross being sued individually and as executors of the will of J. H. Burnett, deceased, to recover a tract of 137 acres of land, a part of the W. P. Harris league in Harris county. The petition contains the usual allegations in an action of trespass to try title, and in addition thereto the following allegations: "That defendants claim under a sheriff's deed from Elijah Hunnings (or Hennings) to J. A. Southmayd, wherein the property therein attempted to be conveyed is described as '200 acres of land of the south end of 800 acres of land known as Red Bluff league,' while the property intended by the parties thereto to be purchased and conveyed was 200 acres off the west end of the 800-acre tract, and that said deed, and defendants' claim under same, is a cloud upon plaintiffs' title to the land sued for herein." The defendants answered by general demurrer, general denial, and plea of not guilty. The trial in the court below with a jury resulted in a verdict and judgment in favor of plaintiffs.

The land in controversy is a part of a tract of 800 acres conveyed by W. P. Harris to Elijah Hunnings on December 12, 1840. This 800-acre tract is described as follows: "All that certain piece or parcel of land beginning on the margin of Galveston Bay at a point east of an old line marked through an island of timber, laying and situated south and near the dwelling now occupied by Benjamin F. Hannah, out of a league called the Red Bluff, granted by the Mexican gov-

ernment to William P. Harris; thence west to the back line or west line of said league; thence south on said back or west line so far that a line run east to Galveston Bay, and with the meanderings of said bay to the place of beginning shall include in the limits of said survey the area of 800 acres of land."

The 137-acre tract claimed by plaintiffs is thus described in plaintiffs' petition, and in a deed from Elijah Hunnings to James Morgan of date April 12, 1846: "Beginning at the lower corner of said Hunnings 800-acre tract on the bay, meandering up said bay N. W. far enough to make 250 vrs. perpendicular front to a stake on bay. Thence W. 2640 vrs. to a stake on Taylors bayou a water oak mkd. cross & 3 chops 3 vrs. dst. bears S. Thence with the meanders of Taylors bayou to post set on bank it being on the line of said Hunnings lower line, thence E. 3130 vrs. to post, place of beginning, containing 137 acres of land English measure. The S. boundary line was run at 10 deg. variation, the upper line N. boundary was run at 9 deg. 45 min. variation."

Plaintiffs are the holders of the Morgan title, and own whatever land he acquired title to by the deed last mentioned.

On November 1, 1838, in a suit by D. A. McCaskill, surviving partner of the firm of McCaskill & Dobie, against Elijah Hunnings, in the county court of Harris county, a judgment was rendered in favor of plaintiff against the said Hunnings for the sum of $132.06 principal and $24.20 interest, and all costs of suit. The minutes of the district court of Harris county contain an entry showing that an execution was issued on this judgment on October 24, 1843, and directed and delivered to the sheriff of Harris county and returned by him on April 6, 1844. The return as shown in these minutes is as follows: "Levied on 200 acres of land and sold to J. A. Southmayd on 6th February, 1844, for particulars see execution." The entry describes the judgment of date November 1, 1838, and the amount $132.06 debt and $24.20 interest. The style of the case is also given.

There is no question as to the name of the plaintiff, D. A. McCaskill, surviving partner of McCaskill & Dobie. Appellees contend that the name of the defendant in said suit, as copied in this entry, is Elijah "Hennings." A photographic copy of this record has been sent up in the statement of facts, and from an examination of this copy in the light of all the facts disclosed by the record, our conclusion is that the name as written in the entry is beyond any reasonable doubt "Hunnings," and not "Hennings," as contended by appellees.

The deed records of Harris county which were introduced in evidence show the following deed, which is dated February 6, 1844, and was duly recorded in said records on February 17, 1844: "Know all men by these presents, that whereas, at the Hon. the county court of Harris county, held at the city of Houston, on the first day of November, 1838, McCaskill and Dobie by D. McCaskill, surviving partner &c. recovered a judgment against Elijah Hunnings or Hemmings [but which plaintiffs contend is 'Hennings'] the sum of one hundred and thirty two 06/100 dollars, with interest and costs of suit, amounting altogether to the sum of one hundred and eight five 01/100 dollars, upon which said judgment, an execution issued thereupon on the eleventh day of November 1838 from the office of the county clerk of said county, and was returned stayed by order of S. N. Dobie agent for the plaintiff. And whereas, on the 17th day of October, A. D. 1843, the papers in the said case were sent up to the said clerk of the district court for said county for execution to issue thereupon. And whereas an execution was issued from the clerk's office of the district court aforesaid, bearing date the 24th day of October A. D. 1843, and directed to the sheriff of Harris county, commanding him to levy on the goods and chattels, lands and tenements of Elijah Hunnings (or Hemmings) sufficient to satisfy the sum of one hundred and thirty two and 06/100 dollars debt, twenty four and 20/100 dollars interest, and twenty eight 75/100 dollars cost to date, as also all costs which may accrue, and expose the same at public sale to the highest bidder after giving lawful notice thereof. That in accordance with the requisitions of said writ, I the sheriff proceeded to levy and seize the following described property, viz.: Two hundred acres of land of the south end on eight hundred acres of land known as the Red Bluff league being a part of tract sold by Wm. P. Harris to the said Hunnings or Hemmings [or, as plaintiffs claim, Hennings]. * * *" The deed goes on to recite that the land was sold at public auction, and reads: "Whereupon John Allen Southmayd offered the sum of sixteen and two thirds cents per acre for said 200 acres * * * the said 200 acres of land was sold to him, the said J. A. Southmayd. * * *" The deed closes with the following: "To have and to hold the same to himself, his heirs and assigns, forever, is as full, good and perfect a manner and estate as the said Elijah Hunnings [very plainly written this time], above mentioned, had at or after the rendition of the cited judgment, in said premises became liable to satisfy the same, with damages and costs of court. * * * Dated February 6, 1844."

The original execution referred to on the execution docket or minutes of the district court of Harris county above mentioned, and in the deed above copied is lost, and could not be produced upon the trial.

Defendants have acquired the title of J. A. Southmayd to the 200 acres of land conveyed by said deed. There has been active assertion of ownership of the 200 acres of

land out of the Elijah Hunnings 800-acre survey by J. A. Southmayd, and those claiming under him, ever since the execution of said sheriff's deed, and it does not appear that any claim was ever made to said 200 acres by Hunnings, or any one claiming under him, until 1897, when some of the heirs of Elijah Hunnings brought suit against the predecessors in title of appellees to recover said land, claiming that the execution sale and sheriff's deed was void because said execution was not issued against Elijah Hunnings, but against Elijah Hemmings, and because said deed was void for insufficiency in the description of the 200 acres of land thereby attempted to be conveyed. Upon an appeal of that case to this court the judgment of the court below was reversed, and judgment rendered in favor of the defendants in the court below, upholding the validity of said deed. Vide Turner v. Crane, 19 Tex. Civ. App. 369, 47 S. W. 822. The statement of facts in the present case contains a photographic copy of the sheriff's deed before set out. From this copy the name of the defendant in the judgment and in the execution under which the levy and sale were made, as written in said deed, might be read Elijah Hemmings, and, unless the character which appears to be an "e" in said name be considered as a part of the capital (H) with which the surname of the defendant in the execution begins, and we think it might be so considered, the name of Hemmings. We do not think that it could be read Hennings. The name in the habendum clause of the deed is plainly written Elijah Hunnings.

There is evidence showing that appellants' predecessor in title for many years, in fact until the rendition of the judgment in the case of Turner v. Crane, before cited, understood that the 200 acres of land conveyed by the sheriff's deed was located on the west end of the 800-acre tract. One of appellants' immediate predecessors in title brought suit and recovered the value of a railroad right of way extending across the west end of said 800 acres, claiming that said right of way was across the 200 acres which he held under said sheriff's deed.

It was also shown that J. A. Southmayd, as notary public, took the acknowledgment of Elijah Hunnings to the deed to James Morgan, conveying the 137 acres claimed by appellees.

The trial court instructed the jury to find for defendants if they believed from the evidence that the execution under which the 200 acres of land was sold by the sheriff of Harris county commanded the sheriff to sell the property of Elijah Hunnings, and to find for plaintiff if they believed from the evidence that said execution commanded the sale of the property of Elijah Hennings. This was the only issue submitted to the jury.

We think the verdict of the jury is without any evidence to support it, and appel-

lants' first assignment of error, which assails the verdict on this ground must be sustained.

The case of Turner v. Crane, supra, is, we think, conclusive of this question. In that case it was held that the discrepancies in the names appearing in the deed as the name of defendant in the judgment and execution were not sufficient, in view of the other undisputed evidence in the case, to raise an issue as to said execution having been issued against Elijah Hunnings. The evidence in this case is certainly no stronger in favor of appellees' contention than the evidence in the Turner Case. If, as contended by appellees, the entry in the district court minutes showing the issuance of the execution and giving the style of the cause in which it was issued is entitled to greater weight as evidence of the name of the person whose property the sheriff was commanded to sell than any of the other evidence on this issue shown by the record, this case is stronger for the defendants than the Turner Case, because, as we have before found, the name of the defendant in the execution, as shown by the entry in said minutes, is undoubtedly Elijah Hunnings. If there was no other evidence in the case and the written entry could alone be looked to, there might be some doubt as to whether the name was Hunnings, but the most that could be said in favor of appellees' contention would be that the name is as much like "Hennings" as "Hunnings." When, however, we look at the entry with a knowledge of the facts that a judgment in favor of D. A. McCaskill, surviving partner of McCaskill & Dobie, was, on the date stated in said entry, rendered against Elijah Hunnings for the exact amounts of debt and interest stated in said entry, that under the execution issued on this judgment the sheriff of Harris county levied upon and sold 200 acres of land belonging to Elijah Hunnings and sold it as the property of said Hunnings, and that neither Hunnings nor his heirs, until more than 50 years thereafter, ever questioned the validity of said execution sale, though they must have known of the active assertion of title thereunder by those claiming under the sheriff's deed, we think no one could hesitate to read the name, as copied in said entry, Elijah Hunnings.

In addition to the facts above set out, there is no evidence of the existence of any person by the name of Hennings at the time this execution was issued, or at any time.

[1] We do not think, in the light of all the evidence in this case, that reasonable minds can differ in the conclusion that the execution under which the 200 acres of land claimed by appellants was sold was issued against Elijah Hunnings, and commanded the sheriff of Harris county to sell the property of said Hunnings.

In the case of Turner v. Crane, supra, it was also held that the description in the sheriff's deed before set out is sufficient, and

that the 200 acres of land thereby conveyed is off the south end of the 800-acre tract, and lies between the south line of the 800-acre tract and a line parallel with said south line extending from the west to the east line of the 800-acre tract, and located far enough north of the south line to include within said boundaries 200 acres of land.

From the description of the 137-acre tract claimed by appellees it is certain that it conflicts with the senior survey of 200 acres owned by appellants, as the location of said 200 acres is fixed by the description in the deed under which appellants claim. The extent of this conflict is not definitely shown. There is no map or plat in the record, and the statement of facts contains no data from which the exact width of the 200-acre tract can be determined. The facts that this tract extends entirely across the 800-acre tract from west to east and along the south line of said tract, and that the 137-acre tract lies in the southeast corner of the 800-acre tract, and extends along the south line of said tract, for a distance of 3,130 varas, conclusively shows that the said two tracts conflict, and that the 137-acre tract is largely, if not entirely, within the boundaries of the 200 acres, but, as before stated, the exact extent of said conflict is not shown. Upon this state of the record the appellees contend that the judgment should be affirmed regardless of whether appellants have shown title to said 200 acres because the burden was on appellants to show the extent of the conflict between the two tracts, and, having failed to discharge this burden, appellees are entitled to recover the 137 acres. In support of this contention appellees cite the cases of McNamara v. Muensch, 66 Tex. 69, 17 S. W. 397, Simmons Hardware Co. v. Davis, 87 Tex. 147, 27 S. W. 62, and Koenigheim v. Miles, 67 Tex. 119, 2 S. W. 81. Each of these cases can be distinguished from the instant case. In none of them did the evidence show a conflict between a junior survey claimed by the plaintiff and a senior survey claimed by the defendant. In the McNamara Case the court held that, the plaintiff having shown a paper title to the land claimed by him by the introduction of deeds to him describing said land, and by proof of common source, "in the absence of some evidence tending to show a superior right in the defendant to the particular tract claimed by him in his pleading," judgment should have been refused in favor of the plaintiff. The court further say in this case: "From the record before us there is nothing to show that the plaintiff has not perfect title to every foot of land described in his petition. He exhibited deeds from one admitted to be the common source of title, which conveyed to him the land claimed in his petition; unless there be some fact not shown, that will control the effect which would ordinarily be given to the calls in the deeds. The defendant made no proof whatever, and, under the charge of the court, there should have been a verdict and judgment for the plaintiff."

In the Koenigheim Case the court finds in effect that the evidence established that the land actually conveyed to the defendant and described in the deed under which he claims did not conflict with plaintiff's land.

In the Simmons Case the evidence failed to show a conflict between the land claimed by plaintiff and that claimed by the defendant.

[2, 3] It goes without saying that a defendant cannot defeat a prima facie title in a plaintiff, evidenced by a deed from a common source, by merely showing that he holds a senior deed from the common source, but he must go further, and show that the land conveyed to him by the common source is the same land, or conflicts with the land conveyed to plaintiff. When a conflict between the land conveyed by the common source to the defendant and that conveyed by a junior deed to the plaintiff is apparent from descriptions in the deeds, the title of the plaintiff fails to that portion of the land in conflict. To permit plaintiff in such case to recover all of the land claimed under his deed would manifestly permit him to recover land to which the evidence shows he has no title. The plaintiff, in an action of trespass to try title, can only recover upon the strength of his own title; and, if the evidence as a whole shows that he has title to only a portion of the land claimed by him, and fails to show to what portion or interest in the land he has title, he shows no right of recovery.

[4] In this case the evidence fails to show that appellees have title to any of the 137 acres claimed by them. As before said, the 200 acres held by the appellants under the senior deed from Hunnings is shown by the description in the two deeds to cover a large portion, if not all, of the 137 acres claimed by appellees. Such being the case, we think the burden was upon appellees to show what, if any, portion of the 137 acres claimed by them was not included in the prior conveyance under which appellants claim. In this connection we will dispose of appellees' claim that the evidence shows that the 200 acres of land claimed by appellants is located on the west end of the 800-acre tract, and is therefore not in conflict with the 137-acre tract claimed by appellees. As stated in our conclusions of fact before set out, there is evidence showing that some of appellants' predecessors in title claimed that the 200 acres was off the west end of the 800 acres, but the claim could not change the location of the land as fixed by the sheriff's deed.

[5] In the Turner Case, before cited, this court construed that deed, and held that it described a certain definite 200 acres of land off the south end of the 800 acres. We have no doubt of the soundness of this construction of said deed. There being no ambiguity

in the description of the land contained in the deed, parol evidence of the intention of the parties cannot be considered for the purpose of showing that a different tract of land from that described in the deed was intended to be conveyed thereby. The deed might have been canceled on the ground of mutual mistake by timely suit for that purpose, but it cannot, in this proceeding, be made to apply to different land from that described therein, by simply showing that the vendee in said deed and others of appellants' predecessors in title supposed that it conveyed other land. Appellants are not claiming other land than that described in the deed, and all of the remainder of the 800 acres of land is held by other parties under title from Hunnings or his heirs.

We do not think the issue of estoppel is raised by the evidence. It is not shown that appellees, or any of their predecessors in title, at the time they purchased the 137 acres, had any knowledge of the fact that any one claiming under the sheriff's deed claimed that the land thereby conveyed was located at any place other than where the description in said deed placed it.

[6] The fact that Southmayd, as notary public, took the acknowledgment of Hunnings to the deed to James Morgan does not show that he was aware that the 137 acres conflicted with the 200 acres conveyed to him by the sheriff's deed. He was not required, as such officer, to read the description of the land conveyed by the deed. If, however, he had read the description and knew of the conflict, the mere fact that he took the grantor's acknowledgment to the deed would not estop him. It was his duty as notary public to take the acknowledgment when requested by the grantor, and an estoppel against him cannot be based on that fact alone.

[7] There is no merit in appellees' contention that the execution under which the 200 acres was sold was functus officio. This contention is based on the fact that a special term of the district court of Harris county intervened between the date the execution was issued and the date of sale thereunder. We think the law in force at the time this execution was issued, which required that it be returned before the next term of the court, referred to the next regular term of the court, and the execution was not returnable to the special term.

[8] Besides this, the act authorizing the holding of the special term provides that it shall be "deemed and considered the fall term of said district court for the year 1843," which had not been held because of the sickness of the judge, and that all process issued and returnable to said fall term should be made returnable to the special term. Gam. Laws, vol. 2, pp. 916, 917. The execution in question was issued after the date for the regular fall term, and before the passage of the act creating the special term; and, as that act only made process originally returnable to the preceding fall term returnable to the special term, we think that process, issued after said fall term, and not returnable thereto, was not returnable to the special term.

[9] The clerk of the district court was authorized to issue the execution upon the judgment rendered in the county court under the act of January 20, 1839 (2 Gam. Laws, 91) which changed the jurisdiction of the county courts, and provided that all process theretofore issued by the county courts in which the amount exceeded $100 should be returned by the judges and clerks of the county courts to the district court. This statute is very clumsily written, and its meaning might well be considered doubtful, but it has been expressly held by our Supreme Court that, in the cases mentioned of which the county court was relieved of jurisdiction, this statute required that the same be transferred to the district court, and conferred upon that court jurisdiction of such cases. Campbell v. Townsend, 26 Tex. 514. This decision is conclusive of the authority of the district clerk to issue the execution in question.

We are of opinion that the judgment of the court below should be reversed, and judgment here rendered for appellants, but this judgment is not to affect appellees' title to any portion of the 137 acres claimed by them which may not be in conflict with the 200 acres claimed by appellants as same is located by the description in the sheriff's deed under which appellants claim.

Reversed and rendered.