**PORCH v. ROONEY et al.    (No. 8678.)**

(Court of Civil Appeals of Texas. Galveston. June 11, 1925. Rehearing Denied July 2, 1925.)

**1. Trespass to try title ⚹32—Description of land sued for held sufficient, where it furnished data by which its location could be definitely fixed.**

In trespass to try title, description in plaintiff's petition of land sued for was sufficient, where it furnished sufficient data by which its location could be definitely fixed.

**2. Deeds ⚹38(1)—Description of land in deed sufficient, where furnishing data by which its location can be definitely fixed.**

Description of land in a deed is sufficient, where it furnishes data by which its location can be definitely fixed.

**3. Courts ⚹45—Judge of Fifty-Fifth judicial district in absence of judge of Eightieth district court held authorized to transfer pending suit of trespass to try title from Eightieth district court to his court.**

Under Rev. St. 1911, art. 30, subd. 11, as amended by Acts 38th Leg. (1923) c. 104, regulating procedure in district courts in counties having two or more district courts with civil jurisdiction only, and reorganizing Eleventh, Fifty-Fifth, Sixty-First, and Eightieth

judicial districts, and prescribing their jurisdiction and mode of procedure, judge of Fifty-Fifth judicial district, in absence of judge of Eightieth district court, was authorized to transfer pending suit of trespass to try title from Eightieth district court to his court, and order of transfer so made was as valid and binding as if made by judge of Eightieth district.

**4. Courts ⚹42(1)—Acts creating Eleventh, Fifty-Fifth, Sixty-First, and Eightieth judicial districts and defining their jurisdiction and fixing mode of procedure held not unconstitutional.**

Rev. St. 1911, art. 30, subd. 11, as amended by Acts 38th Leg. (1923), c. 104, regulating procedure in district courts in counties having two or more district courts with civil jurisdiction only, and reorganizing the Eleventh, Fifty-Fifth, Sixty-First, and Eightieth judicial districts, and prescribing their jurisdiction and mode of procedure, and manifesting a purpose to equalize dockets and expedite business of civil district courts in large counties having two or more such courts, held not violative of Const. art. 5, §§ 7, 11.

**5. Vendor and purchaser ⚹180—Prima facie title of purchaser's successor would prevail, where no showing that purchase-money notes assumed by purchaser had not been paid.**

In trespass to try title, by purchaser's successor against successor in interest of third person, to whom vendor conveyed the land after conveyance to purchaser, prima facie title of purchaser's successor to the land would prevail, where there was no showing that purchase-money notes assumed by purchaser had not been paid when vendor executed deed to third party.

**6. Adverse possession ⚹71(3)—Successor in interest of third person to whom vendor conveyed land after conveyance to purchaser had no title from sovereignty of soil as would support adverse possession.**

Successor in interest of third person, to whom vendor conveyed the land after conveyance to purchaser, had no such claim or color of title from sovereignty of the soil as would support claim of adverse possession by plea of limitation of three years.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Action of trespass to try title by T. E. Rooney and others against W. W. Porch, with cross-action by defendant, impleading his warrantor. Judgment for plaintiffs for the land, and for defendant against his warrantor for purchase money paid by him, and defendant appeals. Affirmed.

See, also, 223 S. W. 245; 239 S. W. 910.

Ward & Ward, of Houston, for appellant.

J. R. Hill and P. Harvey, both of Houston, for appellees.

PLEASANTS, C. J. This is an action of trespass to try title, brought by appellee T. E. Rooney against appellant to recover title

and possession of a tract of 58⁷⁄₁₀ acres of land out of the southeast end of a tract of 228⁷⁄₁₀ acres in Harris county known as section No. 5, patented to Chas. L. Desel, assignee of E. H. House.

The defendant answered by plea of not guilty and plea of limitation of three years, and by cross-action impleaded his warrantor.

The trial in the court below without a jury resulted in a judgment in favor of plaintiff for the land in controversy, and in favor of defendant against his warrantor for the purchase money paid by defendant for the land. The record discloses the following facts:.

The 228⁷⁄₁₀-acre tract of which the land in controversy is a part was patented by the state of Texas to Charles L. Desel.

On October 6, 1892, Desel conveyed the 228⁷⁄₁₀ acres to John H. Ruff for a consideration of $609.86 cash, and two notes, one for $686.10, payable one year after date, and the other for $533.64, payable two years after date. Both of these notes bore interest at the rate of 8 per cent. per annum, and were secured by a vendor's lien expressly reserved in the deed of conveyance.

John H. Ruff on November 19, 1892, conveyed to T. J. Pierce 58⁷⁄₁₀ acres out of the southeast end of the 228⁷⁄₁₀-acre tract, described as follows:

"58⁷⁄₁₀ acres out of the southeast end of the 228⁷⁄₁₀ acres, beginning at a stake marked in the south corner of the W. E. Thomas survey on the north line of Warren D. C. Hall league; thence south 45 degrees west 858 varas to the east corner of Thomas Greene survey, a stake in north marked W. D. C. Hall league; thence north 45 west along the north boundary line of Thomas G. Greene one-third league to a stake and marked 1505 varas; thence north 45 east with the south line of G. McDougal survey, 858 varas to the west corner of W. E. Thomas survey stake, and marked in the prairie; thence south 45 degrees east, with said Thomas Greene line, 1505 varas to the place of beginning containing 228.7 acres."

The consideration mentioned in said deed is as follows:

"For and in consideration of the sum of $469.60 to me paid and secured to be paid * * * as follows: $156.53 cash, and the assumption and agreement to pay $156.52 in one year after date, and $156.53 in two years after date, said amounts being his proportionate part of the total incumbrance now existing against 228, which tract is known as section No. 5, which was patented to Charles L. Desel; the vendor's lien being retained to secure the payment of said amounts."

The field notes contained in this description are the field notes of the 228⁷⁄₁₀-acre tract set out in the patent to the survey. This deed was filed for record on January 20, 1892, and duly recorded in Harris county deed records.

On December 20, 1894, Chas. L. Desel transferred and conveyed to C. Cusack the notes and lien on the 228⁷⁄₁₀ acres held by him against John H. Ruff. By deed of date January 18, 1907, John H. Ruff, by deed of general warranty, conveyed the 228⁷⁄₁₀ acres to John C. Morrison.

Cusack released the vendor's lien held by him to secure the notes executed by Ruff in favor of Desel, and relinquished all rights, title, and interest in the land to Ruff on February 7, 1907.

The deeds from Desel to Cusack, from Ruff to Morrison, and from Cusack to Ruff were all filed for record on the 14th day of February, 1907, and duly recorded in the deed records of Harris county.

Appellant, by mesne conveyances, all of which were duly recorded, holds the title acquired by Morrison to the 228⁷⁄₁₀ acres.

On June 7, 1909, T. J. Pierce conveyed the 58⁷⁄₁₀ acres to Mary E. Scott by deed of general warranty, which was duly filed for record on June 10, 1909.

Mary E. Scott, joined by her husband, W. E. Scott, conveyed to A. E. Coles on May 5, 1916, and Coles on May 8, 1916, conveyed to appellee Rooney.

Appellant purchased the land before Pierce conveyed it to Mary E. Scott, and at the time of his purchase he had no notice of any adverse claim except the constructive notice with which the record of the deed from Ruff to Pierce charged him.

On January 6, 1912, John H. Ruff executed a release and quitclaim to T. J. Pierce of the vendor's lien reserved in his deed to Pierce before mentioned. This release recites that the two notes for $156.53 each, given by Pierce in part payment of the purchase money for the land, "have been fully paid and canceled."

Appellant and his predecessors in title have paid all taxes accruing on the land from 1892 up to the date of the trial in the court below. Pierce was never in possession of the land conveyed to him.

There was evidence showing that the 58⁷⁄₁₀ acres in controversy was leased by W. E. Scott, as agent for his wife, to W. T. Magee for the years 1911 and 1912. Magee went in possession under this lease and used the land for pasturage purposes. In April, 1913, he leased the whole tract of 228⁷⁄₁₀ acres from appellant for one year, commencing May 1, 1913. He died in August, 1913, while in possession under the lease from appellant. His brother, O. F. Magee, who was living with him at the time of his death, continued to hold possession as a tenant of appellant, and was so holding at the time of the trial. This suit was filed in 1917.

[1, 2] Appellant first assails the judgment on the ground that the description in plaintiff's petition of the land sued for is so indefinite and uncertain that no judgment could be properly rendered therefor. The descrip-

tion in the petition follows that contained in the deed from Ruff to Pierce before set out, and in all of the subsequent deeds in appellee's chain of title, except for a recital in the last portion of the description that the land is out of the "east end" of the 228 7/10 acres. This is manifestly an immaterial clerical error, because, in the beginning of the description, the land is declared to be out of the southeast end of the tract, and is further described as the land conveyed by the deeds from Scott to Coles and from Coles to appellee, in both of which it is described as being out of the southeast end of the larger tract, which is accurately described by metes and bounds.

The field notes of the 228 7/10-acre tract show that it is in shape a parallelogram, the longer lines of which run northwest and southeast. These longer lines are 1505 varas in length. The shorter lines, which are 858 varas long, run northeast and southwest. Such being the shape of the survey, there is no uncertainty as to which is its southeast end. That portion of the survey adjoining the short line connecting the southeast ends of the longer lines is obviously its southeast end. The location of the 58 7/10 acres out of its southeast end can be definitely fixed by running a line from one of the longer lines to the other parallel with the shorter line of the survey last mentioned, and at such a distance therefrom as will include within the boundaries thus fixed 58 7/10 acres of land.

Whenever the description of land in a deed furnishes data by which the location of the land can be definitely fixed, our courts have uniformly applied the principle, "that is certain which can be made certain," and held the description sufficient. Turner v. Crane, 19 Tex. Civ. App. 369, 47 S. W. 822; Lunn v. Scarborough (Tex. Civ. App.) 24 S. W. 846; Caddell v. Lumber Co. (Tex. Com. App.) 255 S. W. 397.

Appellant's second complaint is that the court below erred in assuming jurisdiction of the case. The facts upon which this contention is based are shown in the following bill of exceptions:

"Be it remembered that in the above numbered and entitled cause, the following proceedings were had:

"That said cause has been pending in the Eightieth judicial district court in Harris county, Texas, since the time it was filed, it having been filed in said court, and that said cause has never been, by the judge of the said Eightieth judicial district court transferred to any other court.

"That on the 7th day of April, A. D. 1924, said cause was called for trial by the judge of the Fifty-Fifth judicial district court of Harris county, Texas, under an agreement between the judges of the different courts as to setting of dockets in the Eleventh, Fifty-Fifth, Sixty-First, and Eightieth judicial district courts of Harris county, Texas, said cause having been set by the Fifty-Fifth judicial district court for said date.

"That thereupon the plaintiff announced ready for trial, and the defendant stated that he was not ready, defendant's counsel stating at that time that he was not ready because of an absent witness by whom he expected to prove certain facts of limitation, and stated orally what his application for continuance would include; thereupon by agreement the case was passed until the next day, and upon that day the defendant did not announce ready for trial, but stated that he did not believe the court had jurisdiction to try the case; that the cause had not been transferred by the judge of the Eightieth judicial district court to the Fifty-Fifth judicial district court, and that the Eightieth judicial district court was then engaged in regular session provided by law in the Eightieth district in Waller county, and that the judge of said court was actually holding court in Waller county, Texas.

"That thereupon the judge of the Fifty-Fifth judicial district court entered an order transferring said cause from the Eightieth to the Fifty-Fifth judicial district court, over the objection of the defendant, proceeded to try said cause, and, after hearing same, rendered judgment against defendant on the 8th day of April, A. D. 1924.

"That the Eightieth judicial district court was, at the time the case was called for trial and at the time it was actually tried, engaged in regular session, and the judge thereof was actually engaged in holding a term of the Eightieth judicial district court in Waller counsel, Texas, and was absent from Harris county, Texas.

"To all of which action by the Fifty-Fifth judicial district court defendant then and there in open court excepted, and here now tenders his bill of exceptions, and asks that the same be allowed and be made a part of the record in this cause."

The Thirty-Eighth Legislature, at its regular session in 1923, passed an act regulating procedure in district courts in counties having two or more district courts with civil jurisdiction only, the terms of which continue for three months or longer. Acts of Thirty-Eighth Legislature, page 203, amending Rev. St. 1911, art. 30. Subdivision 11 of this act contains the following provisions:

"When the judge of any of said courts is engaged in the trial of a case and there is another case in this court ready for trial, and if at the time the judge of another of said courts is not engaged in the trial of a case, the judge in whose court the case is pending may and it shall be his duty to transfer the case to any other of said courts the judge of which is not then engaged in the trial of a case, and it shall be the duty of the judge to whose court the case is transferred to receive and try such case. When the judge of any court completes the trial of a case and has no other case in his court ready for trial and becomes disengaged, it shall be his duty to notify the presiding judge and it shall be the duty of the presiding judge to require the transfer to the court of the disengaged judge of the next case which is ready for trial in any of said courts and the

judge in whose court the case is pending shall transfer the same. Instead of transferring any case from one court to another any judge not engaged in his own court may try any case in another court. Two or more judges may try cases in the same court at the same time, and in doing so each judge may occupy the courtroom set apart for the court of which he is judge or may sit in the courtroom set apart for any of the other judges. The judges of said four courts may, in their discretion, at any time, exchange benches or districts, whether disqualified in any case or not, and whether requested or directed by the Governor só to do or not. If any judge is disqualified in any case and his disqualification is certified to the Governor, the Governor may require any of the judges of said courts to exchange districts, either with each other, or with any other district judge in Texas."

The same Legislature at the same session passed an act reorganizing the Eleventh, Fifty-Fifth, Sixty-First, and Eightieth judicial districts, fixing the terms, and providing for the administration of the business of the courts in said districts.

This act provides that Harris county shall constitute the Eleventh, Fifty-Fifth, and Sixty-First districts, and with Waller county the Eightieth district. The terms of the Eleventh, Fifty-Fifth, and Sixty-First courts are two each year, each term lasting six months.

The Eightieth district court is given both criminal and civil jurisdiction in Waller county, but in Harris county its jurisdiction is civil only. Two terms of this court are provided for Waller county, each of which may continue for five weeks. Two terms of six months each are also provided for Harris county, and the court is to be kept open in Harris county during the Waller county terms, and whenever the judge is not engaged in disposing of the business of the court in Waller county he may proceed with the business of the court in Harris county, and during his absence in Waller county the business of his court in Harris county may be disposed of by any of the judges of the Eleventh, Fifty-Fifth, or Sixty-First districts. This act further provides:

"In case of the absence, sickness or disqualification of any judge, any other of said four judges may hold court for him or may transfer from his court to any other of said courts any case or proceeding then pending in the court of said absent, sick or disqualified judge. The judge of any of said courts may hear and determine demurrers, motions, applications for injunction, applications for receivers, pleas of privilege, pleas in abatement, motions for new trial, and all dilatory pleas and preliminary matters, questions and proceedings, and any part of a case or proceeding, and enter judgment or order thereon in the court in which the case is pending without having the case transferred to the court of the judge acting, and the judge in whose court the case is pending or the judge of any other of said courts

275 S.W.—32

may thereafter proceed to hear, determine and complete the case or any part thereof. Any judgment rendered or action taken by any of said judges in any of said courts in Harris county, whether in his own court or not, shall be as valid and binding as if the judgment were rendered or the action taken by the judge of the court in which the suit or proceeding was first filed, and in the court and courtroom of that court." Acts of Thirty-Eighth Legislature, page 203.

[3] It is, we think, clear that under the provisions of the acts above quoted the judge of the Fifty-Fifth judicial district, in the absence of the judge of the Eightieth district court, was authorized to transfer this case from the Eightieth district court to his court, and that the order of transfer so made by him in his court was in the language of the statute as "valid and binding" as if made by the judge of the Eightieth district.

[4] The evident purpose of these legislative acts was to equalize the dockets and expedite the business of civil district courts in large counties having two or more such courts, and we find nothing in the provisions of these statutes which is inhibited by any express or necessarily implied provision of our state Constitution. The provision in section 7, art. 5, of the Constitution, that there shall be a regular term of a district court held at the county seat of each county at least twice in each year, the provision in section 11 of said article that district judges may exchange districts and hold court for each other whenever they may deem such exchange expedient, and section 7 of said article which vests the judicial power of this state in a Supreme Court, Courts of Civil Appeals, a Court of Criminal Appeals, district courts, county courts, commissioners' courts, and justices of the peace are the provisions of the Constitution cited by appellant as prohibiting the Legislature from enacting the statutes before cited. We are unable to see anything in the provisions of these statutes in conflict with the cited provisions of the Constitution.

On a former appeal of this case, we held that the sale of the property by Ruff to Morrison 15 years after his sale to Pierce, and 13 years after the notes executed by Pierce in payment of the purchase money became due, in the absence of any evidence of possession or claim to the land by Pierce or of any payment on his notes, was a valid exercise of the right of rescission by Ruff of the contract of sale, and his deed to Morrison passed the superior title to the land which had remained in him by virtue of the vendor's lien reserved in his deed to Pierce.

[5] This was the rule of decision in this state at the time our opinion on that appeal was written (223 S. W. 245). A writ of error was granted by the Supreme Court from that decision, and in an opinion by Section B, Commission of Appeals, 239 S. W. 910, it is

held that the payment of the notes by Pierce prior to the conveyance by Ruff to Morrison would be presumed·in the absence of evidence to the contrary. On this ground our former judgment was reversed and the cause remanded to the district court to give Porch an opportunity to show that the notes were not paid at the time Ruff conveyed to Morrison. Appellant failed on the trial from which this appeal is prosecuted to make this showing, and under the rule laid down in the opinion last cited appellees' prima facie title to the land should prevail.

[6] The evidence is sufficient to establish adverse possession and claim to the land by appellant for more than three years before this suit was filed, but since Ruff's deed to Pierce was prior to his conveyance to Morrison, appellant, who holds under Morrison, has no such chain of title or color of title from the sovereignty of the soil as will support the plea of limitation of three years. Dixon v. Cruse (Tex. Civ. App.) 127 S. W. 591; Blum v. Rogers, 71 Tex. 668, 9 S. W. 595; Brownson v. Scanlan, 59 Tex. 225.

These conclusions render the other questions presented in appellant's brief, which relate to the admissibility of evidence introduced and offered upon the issues of appellant's adverse possession of the land and of his want of notice, at the time he purchased the land, of Pierce's claim of title, immaterial, and require an affirmance of the judgment.

Affirmed.