## CLAYBORN et al. v. GAMBILL et al.

No. 4750.

Court of Civil Appeals of Texas.
Texarkana.
Oct. 31, 1935.

Rehearing Denied Nov. 14, 1935.

Banks & Banks, Andrews, Kelley, Kurth & Campbell, Palmer Bradley, and W. M. Streetman, all of Houston, for appellants.

J. B. Hatchitt, of Wichita Falls, and Chauncey & Chauncey, and Bramlette & Levy, all of Longview, for appellees.

SELLERS, Justice.

Levi Gambill, W. B. Chauncey, and J. B. Hatchitt brought this suit on November 19, 1932, in the One Hundred and Twenty-Fourth district court of Gregg county in trespass to try title against J. C. Clayborn and a number of others. The defendants answered by pleas of not guilty and by pleading the three, five, and ten-year statutes of limitation; and by way of cross-action defendants sued in trespass to try title to recover the land sued for by plaintiffs. The plaintiffs answered the cross-action filed by defendants by plea of not guilty and by plea that plaintiffs were at all times material to this suit joint owners and cotenants with the defendants and those under whom the defendants claimed. The case was tried before the court without a jury upon an agreed statement of facts, and resulted in a judgment for plaintiffs for title to the land sued for, and from this judgment the defendants have duly prosecuted an appeal to this court.

By the agreed statement of facts it is shown that Cain Clayborn on August 6, 1877, purchased from M. E. Berry and others a tract of land described as follows: "Being on the waters of Prairie Creek and Penn's branch and being a part of the I. Baity Survey and the east part of the same and is all of said survey except 200 acres conveyed by George D. Northcutt and wife off the west part of said survey and nine acres conveyed to W. R. Causey containing one hundred and thirty-one acres of land more or less."

At the time Cain Clayborn purchased this land, he was married to Ann Clayborn and the land thus acquired became their

community property. Cain Clayborn and his wife, Ann, conveyed 50 acres of the land to Josh Clayborn, which 50 acres was correctly described by metes and bounds and over which there is no controversy in this suit. They also conveyed 20 acres to Henry King and there is no controversy over this tract. It is agreed that Cain Clayborn and his wife still owned by actual survey 109.4 acres of land purchased from Berry after the above-mentioned tracts were sold by them. That this 109.4 acres lies in the southeast corner of the I. Baity survey in the form of a parallelogram. It is further agreed that the southeast corner of the 50 acres conveyed by Cain Clayborn and his wife to Josh Clayborn is also the northeast corner of the 109.4 acres, this point being on the east line of the I. Baity survey.

Ann Clayborn died intestate about the year 1900. She was survived by five children; four by Cain Clayborn, to wit, Josh (or J. C.) Clayborn, Joe Clayborn, Mike Clayborn, and Sam Clayborn; and one child by a former marriage, Fed Baton. Cain Clayborn died in 1918. On August, 8, 1901, Cain Clayborn executed a deed to Will Rather, which deed was duly recorded on August 31, 1901, in the deed records of Gregg county, and which deed is in full as follows:

"The State of Texas, County of Gregg

"Know All Men by These Presents:

"That we, Cain Cleburn, Joshua Cleburn, Sam Cleburn, Mike Cleburn, Joe Cleburn of the County of Gregg in the State aforesaid, for and in consideration of the sum of One Hundred Dollars, to me paid and secured to be paid by Will Rather as follows:

"Fifty-five Dollars cash in hand, the receipt of which is hereby acknowledged and one promissory note for the sum of Forty-five Dollars due February 15th, 1902, have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said Will Rather of the County of Gregg and State of Texas,

"All that certain lot, tract or parcel of land described as follows:

"Being on the waters of Prairie Creek and Penns Branch and being a part of the I. Baity Survey and being the East part of the same and is all of said survey except 200 acres conveyed to Geo. D. Northcutt and wife, off the West part of same survey and nine acres conveyed to W. R. Causey, and being 50 acres out of the remaining one hundred and thirty-one acres on the East end, commencing at Josh Cleburn's South East corner and running South ——— yards to stake for corner.

"Thence West ——— yards to stake for corner.

"Thence North ——— yards to a stake for corner;

"Thence East to place of beginning, containing 50 acres of land.

"Being the same land conveyed to Cain Cleburn by M. E. Berry, W. D. Berry, J. F. Berry and recorded in Book D, pages 260–61, in the records of Deeds of Gregg County, Texas.

"To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Will Rather, his heirs and assigns forever and I do hereby bind my heirs, executors and administrators, to warrant and forever defend all and singular the said premises unto the said Will Rather his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof. But it is expressly agreed and stipulated that the Vendor's Lien is retained against the above described property, premises and improvements, until the above described note and all interest thereon are fully paid according to the face, tenor and effect, when this deed shall become absolute.

"Witness my hand at Longview, this 8th day of August, A. D. 1901.

                    his
    "Cain    (X)    Cleburn."
                    mark

This deed was duly acknowledged.

On October 3, 1904, Will Rather conveyed the same tract to Simon Clayborn by description identical with that contained in the above deed, and this deed was recorded January 19, 1919, in deed records of Gregg county. On November 8, 1906, Simon Clayborn conveyed the same tract of land by a correct description to Josh (a son of Cain Clayborn) Clayborn, which deed was recorded September 15, 1930, in the deed records of Gregg county.

The land here involved is the 50 acres of land conveyed by Cain Clayborn to Will Rather, the appellants claiming title under this deed; and the appellees claiming title through the heirs of Ann Clayborn, who claim by inheritance. The agreement with reference to the possession

is as follows: "Neither Will Rather nor Simon Clayborn ever went into actual possession of the land in controversy, but after the date of the deed from Simon Clayborn to Josh Clayborn, dated November 8, 1906, Josh Clayborn immediately entered into possession of the entire fifty acres in controversy, fencing the same, clearing and cultivating about one-half thereof and continuously thereafter claimed said land adversely against all parties, but without actual or other notice to plaintiffs or their predecessors in title than would be imputed to them from the facts and records of deeds as herein stated. Since that date the said Josh Clayborn has remained in sole possession of said land, exercising continuously the above acts of ownership, and paying all taxes thereon. All of the above acts of ownership were continuous from said date down to the time of the filing of this suit. None of the plaintiffs nor their predecessors in title have ever occupied any part of the land in controversy. From 1906 to 1931 said land was remotely situated from any improved highway, otherwise unimproved and comparatively poor for farming purposes."

We gather from the briefs of the parties to this appeal that the judgment of the trial court was rendered for appellees mainly upon the theory that the description of the land as contained in the deed from Cain Clayborn to Will Rather was insufficient to identify the land, and for that reason no title passed to Will Rather by virtue of such deed. A satisfactory conclusion of this question has caused this court considerable difficulty. However, it has been concluded that the description contained in the deed should be upheld as sufficient to constitute a valid conveyance. The description in the Will Rather deed as interpreted by this court calls for 50 acres of land on the east end of the 109.4 acres owned at the time the deed was made by Cain Clayborn and the surviving heirs of Ann Clayborn in the I. Baity survey, the beginning point of the 50-acre survey to be at the northeast corner of the 109.4-acre tract. With this information and the further fact that the 109.4 acres is in the form of a parallelogram, the rule is that the courts will construct a survey of the designated acreage by lines drawn parallel to the designated line or lines of the 109.4-acre tract. 14 Tex. Jur. § 238, p. 1032.

It is the contention of appellees that the Will Rather deed is not subject to the interpretation that the 50 acres is to be taken from the east end of the 131 acres (which it was agreed was in fact 109.4 acres), but it is their view that the phrase "on the east end" refers to the 131 acres as being on the east end of the I. Baity survey, and does not refer to the 50 acres as being on the east end of the 131-acre tract. A well-settled rule of construction requires an interpretation under which the deed will be valid and operative in preference to one which will nullify it; and another equally as well-settled rule is that the language of the deed is the language of the grantor, and if there is any doubt as to its construction, it should be resolved against the grantor. Curdy v. Stafford, 88 Tex. 120, 30 S. W. 551. In view of these rules, it is clear to us that appellees' construction cannot be sustained. If the phrase "on the east end" refers to the 131 acres as coming off the east end of the I. Baity survey, then it must follow that the remaining part of the sentence, "Commencing at Josh Clayborn's S. E. corner and running South —————— yards to stake for corner," must likewise refer to the 131 acres. From the face of the deed, this cannot be true for the reason that the last call in the description, "Thence East to the place of beginning containing 50 acres of land," shows beyond any doubt that the calls for course contained in the description, as well as the beginning point, have reference to the 50-acre tract rather than the 131 acres.

Having determined that the deed to Will Rather was sufficient to pass such title to him as Cain Clayborn held to the land involved, it remains to be determined just what this title was. The land was community property of Cain Clayborn and his deceased wife, Ann Clayborn. It was conveyed by Berry and others to Cain Clayborn. The appellees, or plaintiffs in the trial court, hold title under the heirs of Ann Clayborn. Under these facts it is well settled that Cain Clayborn held the legal title to the land involved and the appellees' title which was acquired from the heirs of Ann Clayborn was an equitable title. Mitchell v. Schofield, 106 Tex. 512, 171 S. W. 1121. Therefore the legal title to the land passed to Will Rather by virtue of the deed from Cain Clayborn, and, in order for appellees to recover on their equitable title, the burden was upon them

to show that Will Rather was not an innocent purchaser of their equitable title. Elliott et al. v. Wallace et al. (Tex. Com. App.) 59 S.W.(2d) 109. The record is silent as to any notice to Will Rather of such equitable title unless it can be said that the deed from Cain Clayborn to Will Rather was sufficient to excite an inquiry on the part of Will Rather, since it carried the names of some of the children of Ann Clayborn as grantors, although they never signed the deed. We do not believe under the authority of Gilmer's Estate v. Veatch, 102 Tex. 384, 117 S. W. 430, such information would constitute any notice of the equitable title held by appellees. Appellants hold the title of Will Rather, and since appellees have failed to show a superior title to that of Will Rather, it follows that they were not entitled to recovery against appellants.

The judgment will therefore be reversed and judgment here rendered in favor of appellants for title to the land involved.