KUKLIES et al. v. REINERT et al.

No. 3064.

Court of Civil Appeals of Texas. Waco.

Feb. 26, 1953.

Rehearing Denied March 31, 1953.

Shank, Dedman & Payne and Johnson & Abney, Dallas, for appellants.

Rice, Waitz & Rice, San Antonio, for appellees.

TIREY, Justice.

The Lone Star Gas Company brought its bill of interpleader against Otto Reinert and wife and other necessary parties for the purpose of determining the ownership of the proceeds accruing from gas produced from a well drilled on the farm belonging to Otto Reinert and his wife, and it deposited the proceeds into the registry of the court and asked the court to determine the rights of the parties.

Pertinent to this discussion the bill of interpleader alleged there were certain liens existing against the property and that there was of record a certain unitization agreement between the parties affecting the land that made it necessary that the court determine the ownership of the proceeds received from the gas.

Each of the parties named in the bill of interpleader filed appropriate answers setting up their respective rights.

Otto Reinert and his wife in their answer and cross-action denied plaintiffs' right

to bill of interpleader and sought to have the same declared void. They sought by cross-action in trespass to try title to recover title and possession of their premises and for damages against all of the parties and prayed for appropriate relief.

Defendant Texas Consolidated Oils answered to the effect that it was the owner by assignment of an oil, gas and mineral lease executed by Otto Reinert and wife under date of June 15, 1944, recorded in Vol. 131, page 591, Deed Records of Hamilton County, Texas, covering the Otto Reinert tract, and described it by metes and bounds, and set up its interest under and by virtue of the lease and the assignment and prayed for appropriate relief. Texas Consolidated Oils further pleaded in the alternative "that the said Otto Reinert and wife Dora Reinert, lessors in the above described lease, joined with Julius Reinert and wife Minnie Reinert, and Walter Kuklies and wife Eline Kuklies, lessors in two other certain leases more particularly hereinabove described, and Rudolph Grossenbacher, lessee in the first two of said leases, and L. E. Sumner, lessee in the other, in the execution of an agreement dated February 8, 1944, entitled Gas Unitization and Operating Agreement, which provides that all of the lands described in said leases shall for the production of gas only be developed and operated as a unit designated therein as the 'Consolidated Area'. Said agreement is filed for record in Vol. 132, page 550 of the Deed Records of Hamilton County, Texas. The lands and leases covered and included in said agreement are more particularly set out and described in Vol. 127, page 144 and Vol. 130, page 508 of the Deed Records of Hamilton County, Texas," and further alleged that such unitization agreement provides in part:

"1. Lessors hereby agree that for the purpose of drilling development and production of gas, said consolidated area, however the same may now or hereafter be divided in ownership, shall be and remain a single unit, and shall be developed and operated as such and all royalties accruing from gas produced from any well or wells located any-where on said consolidated area, shall be divided among and paid to the several lessors, their heirs, successors, and assigns, in the proportion which the acreage owned by them respectively in the consolidated area, as hereinbefore set forth, bears to the total acreage contained in said consolidated area.

"2. The completion of a well producing gas in paying quantities within the consolidated area, shall perpetuate the oil and gas rights of lessee under all of said leases in said entire consolidated area and relieve lessee from all further obligation to drill and/or to pay delay rentals under any and all leases covering lands within said area lessee shall not be expressly or impliedly required to drill more than one well for gas upon the consolidated area, or to offset gas wells on contiguous or adjacent premises, regardless of when, where or by whom drilled. It is expressly agreed by the parties hereto that this agreement shall not effect an apportionment of royalty payable on oil, nor shall it constitute a waiver of any rights of lessors to require offsets to oil wells, it being the intention of the parties hereto that the oil royalties remain in the same parties as though this agreement had not been entered into.

"8. This agreement and the rights of lessee under all leases covering tracts within the consolidated area shall be and remain in full force and effect so long as gas is or can be produced in paying quantities, from any well in said area, and shall not be effected by the expiration of the primary term of said leases or any of them."

It was further alleged that a well was completed within the consolidated area on the 14th of December, 1945; that it has continuously produced gas in paying quantities from the date of its completion to the present time, and that the unitization agreemen is valid, active, alive and subsisting, and it prayed for appropriate relief.

The court submitted the following issues to the jury:

"Special Issue No. One: Do you find from a preponderance of the evidence that at the time Rudolph Grossenbacher, paid to the plaintiff Otto Reinert, the sum of $195.00 that said sum so paid represented the cash consideration for the execution of the lease of date June 15, 1944, or as payment of rentals due in part on a former lease of which the latter lease was a correction?" to which the jury answered that the sum of $195.00 was paid as rental.

"Special Issue No. Two: Do you find from a preponderance of the evidence in this case that at the time Otto Reinert and wife signed and delivered the instrument known as the 'Gas Division Order and Operating Agreement', of date February 8, 1944, to Rudolph Grossenbacher, as lessee, that said instrument was delivered upon the condition that all parties owning an interest in the contemplated block should sign the same before it was to become effective?", to which the jury answered "Yes."

"Special Issue No. Three: Do you find from a preponderance of the evidence that any person or persons, owning an interest in the land constituting the proposed drilling block, failed to sign said 'Division Order and Operating Agreement?', to which the jury answered 'No'."

On the verdict of the jury the court found and decreed that the Lone Star Gas Company is entitled to file its bill of interpleader, and that no party to the action is asking or claiming any right or action against it, and the Gas Company was allowed to go hence with its costs other than attorney's fees, which it waived. The court further decreed that Otto Reinert and wife, Dora Reinert, do recover judgment against all of the parties necessary and indispensable to this suit for the title and possession of all the oil, gas and other minerals in, under, or to be produced from his 195 acres of land, and described it by metes and bounds, subject, however, to the oil and gas and other mineral leases between Otto Reinert and wife as lessors, to Rudolph Grossenbacher, as lessee of date June 15, 1944, as corrected by lease dated June 15, 1944, between the same lessors and lessee, which said lease was perpetuated by the completion of a producing gas well on such tract.

The court further found that the instrument called the Gas Division Order and Operating Agreement, dated February 8, 1944, executed by Walter Kuklies and wife, Eline Kuklies, L. E. Sumner, Otto Reinert and wife, Dora Reinert, Julius Reinert and wife, Minnie Reinert, as lessors, and Rudolph Grossenbacher, as lessee, is insufficient in law to create a unit or as a pooling agreement of the above described land belonging to Otto Reinert and wife with any other land whatsoever. The decree then disposed of all of the other parties in accord with the above findings, the details of which are not pertinent here.

Walter Kuklies and wife and Julius Reinert and wife duly perfected their appeal to this court.

These appellants assail the decree of the court on five points.

"Point 1. This case should be reversed as to appellants and judgment rendered appellants for their interest in the gas royalty produced and marketed from the gas well located on the Otto Reinert land, because the Gas Division Order and Operating Agreement executed and acknowledged by appellants and the appellees, Otto and Dora Reinert, as lessors, provides for division of the gas royalty among and payment to appellants and said appellees as follows:

" 'Lessors hereby agree that for the purpose of drilling, development and production of gas, and division of royalties on gas, said consolidated area, however the same may now or hereafter be divided in ownership, shall be and remain a single unit, and shall be developed and operated as such and all royalties accruing from gas produced from any well or wells located anywhere on said consolidated area, shall

be divided among and paid to the several lessors, their heirs, successors, and assigns, in the proportion which the acreage owned by them respectively in the consolidated area, as hereinbefore set forth, bears to the total acreage contained in said consolidated area.'

"Point II. This case should be reversed as to appellants and judgment rendered appellants for their interest in the gas royalty produced and marketed from the gas well located on the Otto Reinert land, because the recitals that 'lessors own, in severalty, the tracts of land set opposite their respective names' and that 'all royalties accruing from gas produced from any well or wells located anywhere on said consolidated area, shall be divided among and paid to the several lessors, their heirs, successors, and assigns, in the proportion which the acreage owned by them respectively in the consolidated area, as hereinbefore set forth, bears to the total acreage contained in said consolidated area' in the Gas Division Order and Operating Agreement, executed and acknowledged by appellants and appellees, Otto Reinert and wife, Dora Reinert, and filed for record the 27th day of July, 1945, with the County Clerk of Hamilton County, Texas, and recorded in Vol. 132, page 550, of the Deed Records, Constitute an Absolute Estoppel preventing appellees Otto Reinert and wife, Dora Reinert, from asserting against appellants title to all of the proceeds from the sale of the gas royalty produced and marketed from the gas well located on the Otto Reinert land, being a part of the 'consolidated area' consisting of 635 acres.

"Point III. This case should be reversed as to appellants and judgment rendered appellants for the amount of the proceeds from the sale of the gas allocable to the interest in the gas royalty produced and marketed from the gas well located on the Otto Rein-

ert land, because the undisputed evidence shows that the contiguous lands belonging to appellee Otto Reinert and appellants Julius Reinert and Walter Kuklies, were pooled for the purpose of the 'division of royalties on gas' produced from a well located on the consolidated area consisting of 635 acres of land.

"Point IV. This case should be reversed as to appellants and judgment rendered appellants for their interest in the gas royalty produced and marketed from the gas well located on the Otto Reinert land, because the 'consolidated area' consisting of 635 acres is sufficiently described in the Gas Division Order and Operating Agreement.

"Point V. This case should be reversed as to appellants and judgment rendered appellants for their interest in the gas royalty produced and marketed from the gas well located on the Otto Reinert land, because there is no evidence that the Gas Division Order and Operating Agreement is void and there is no pleading by any party, raising the issue that said Gas Division Order and Operating Agreement was executed as a result of fraud, accident or mistake."

It is our view that points 3, 4 and 5, under the undisputed facts, are controlling, and that each of them must be sustained.

■ █ Since it is without dispute that all of the land described in the unitization agreement is contiguous and since there is no question as to the description of the Kuklies lease, and that such lease covered his 210 acre tract, and all of it is contained in the unitization agreement, and since the description of the Otto Reinert tract is not questioned and all of it is contained in the unitization agreement, the sole and only question remaining for our consideration is as to the description of the Julius Reinert tract of 230 acres, out of a total of 280 acres. All of the land is located in Hamilton County, and, as said before, it is con-

tiguous or adjoining, and is designated as the "Consolidated Area".

In the unitization agreement we find the following:

"Lessors own, in severalty, the tracts of land set opposite their respective names; and lessee is the owner of oil and gas leases covering all of said tracts of land, to-wit:

| Name | Description | Acres |
|------|-------------|-------|
| Water Kuklies and wife and L. A. Sumner | Waller and Barnes surs. | 210 |
| Otto and Dora Reinert | same land described in deed Jan. 1, 1924 by Henry and Auguste Reinert to Otto Reinert Vol. 93, page 23, Deed Records | 195 |
| Julius Reinert and wife, Minnie Reinert | Part James Montgomery and Wm. R. Barnes surveys | 230 |

the above land being situated in Hamilton County, State of Texas and containing a total of ——— acres to be hereinafter collectively designated as the 'Consolidated Area.' "

We further quote from the unitization agreement:

"4. If any Lessor owns lands which are not included in the consolidated area but are included in a lease which also covers lands within said area, the drilling of a well within said area shall not relieve Lessee from the payment of delay rentals in respect to such lands as may not be within said area, but such lease as to such lands shall be deemed and construed to be a separate lease, covering only such lands.

"5. Subject to the limitation that the consolidated area shall not exceed a total of 640 acres and shall consist of contiguous tracts, Lessee may at any time change the consolidated area above designated by the addition, removal or substitution of acreage, and all royalties accruing from gas produced from the revised consolidated area shall be divided among and paid to the several acreage owners in the proportion which the acreage owned by them respectively in the revised consolidated area bears to the total acreage contained therein. No tract included in a producing consolidated area shall be removed therefrom unless it be included in another producing consolidated area. Such change in the consolidated area shall be effective when Lessee executes and files for record an instrument designating and describing the revised consolidated area, and setting out the proportionate interest of each owner of acreage included therein, and all provisions hereof shall extend to and be applied to such revised consolidated area as if it had been originally designated herein.

"6. Each of the Lessors, for himself, herself, or itself, and not for the other or others, warrants the title to his, her, or its land within the consolidated area, and agrees that if his, her, or its title thereto, or to any part thereof, shall fail, his, her, or its interest under this agreement shall be reduced proportionately, and the interest of the other parties hereunder shall be proportionately increased, provided that the successful adverse claimant shall have the right to become a party hereto and to agree that the disputed interest shall continue to be part of the consolidated area and of the interests covered by this agreement. In case the successful claimant shall not become a party hereto, an accounting among the Lessors shall be had so as to restore the

parties to their rightful positions with respect to the interests title to which has failed.

"7. During the pendency of any controversy or dispute as to title to any lands within the consolidated area, Lessee shall have the right to withhold and retain all sums payable hereunder to the party whose title is in dispute until the final termination of the controversy or dispute and then to distribute the same among those lawfully entitled thereto.

"8. This agreement and the rights of Lessee under all leases covering tracts within the consolidated area shall be and remain in full force and effect so long as gas is or can be produced in paying quantities from any well in said area, and shall not be affected by the expiration of the primary term of said leases, or any of them."

Returning to a discussion of the description of the 230 acres out of the Julius Reinert lease, we find that the record discloses the following undisputed facts: Grossenbacher testified to the effect that he was familiar with the tracts described in the unitization agreement on the ground; that they join or "hang together." In the stipulations filed by the parties as to the supplemental record we find defendants' exhibit No. 4 introduced in evidence, which transferred certain interests from Grossenbacher, lessee, to H. W. Snowden, this transfer being with reference to oil and gas leases covering the Walter Kuklies, Otto Reinert and Julius Reinert tracts. In this instrument the Walter Kuklies tract is described as follows:

"210 acres of land being 51⅔ acres out of Edwin Waller Survey, Patent No. 491, Vol. 9, Abstract No. 855, and 158⅓ acres out of the W. R. Barnes Survey, Patent No. 260, Vol. 26, Abstract No. 52, situated in Hamilton County, Texas, being more particularly described by metes and bounds in said lease to which reference is here made for all purposes. Said lease being recorded in Vol. 130, page 508 of the Deed Records of Hamilton County, Texas."

The Otto Reinert tract is described as follows:

"195 acres more or less out of the L. W. Dickerson Survey, and the E. Waller Survey, and being all the land out of said surveys owned by said lessors in said surveys, in Hamilton County, Texas, said lease being recorded in Vol. 131, page 102 of the Deed Records of Hamilton County, Texas."

The Julius Reinert tract is described as follows:

"Bound as follows: Kuklies Heirs on the North, Paul Noack on East, Mrs. Mary Zeiss and E. Anderson on South, Oscar Bufe on West, containing 280 acres more or less, said lease having been assigned to D. C. Reed of Austin, Texas, and subsequently reassigned to Rudolph Grossenbacher, insofar as it covers the gas rights only, said lease being recorded in Vol. 127, page 144 of the Deed Records of Hamilton County, Texas, and reference being made to said leases, and the records thereof for a more complete description."

As we have heretofore stated, since the unitization agreement took all of the Kuklies tract and the Otto Reinert tract, the sole and only question here is: Does the record here made furnish within itself or by reference to some other existing writing the means or data by which the 230 acre tract referred to in the unitization agreement can be identified with reasonable certainty? We think it does. That is the rule to be followed as stated by our Supreme Court in Hoover v. Wukasch, 254 S.W.2d 507. Our Supreme Court made substantially the same statement in Maupin v. Chaney, 139 Tex. 426, 163 S.W.2d 380.

Since the unitization agreement provided that it was a consolidated area, the rule of adjoinder has peculiar significance here. That rule was stated and applied by this court in Leone Plantation, Inc., v. Roach, 187 S.W.2d 674, 675, 681, writ ref. w.o.m., and this court there said: "A call for adjoinder is ordinarily given controlling

effect over a call for course and distance, except where it is proved that the call for adjoinder was made by conjecture or by mistake." There is certainly no mistake or conjecture here as to the adjoinder line.

This court again applied the adjoinder rule in Giles v. Kretzmeier, 239 S.W.2d 706, writ ref., points 5–8, p. 714, and the rule of our Supreme Court in Stanolind Oil & Gas Co. v. State, 129 Tex. 547, 101 S.W.2d 801, 802 and 104 S.W.2d 1, where the court held that " * * * If call for adjoinder is made through mistake, general rule that such call is given controlling effect over call for course and distance is not applicable, but it does not always follow that course and distance call will control, and court is left free to construct survey in such manner as will best give effect to intention to be determined from entire description."

In addition to the adjoinder call, we have an accurate description of the boundary lines of the Julius Reinert tract. It is bound on the North by the Kuklies heirs, on the East by Paul Noack, by Mrs. Mary Zeiss and E. Anderson on the South and Oscar Bufe on the West. Such description recites that it contains 280 acres, more or less, and that the lease is recorded in Vol. 127, page 144 of the Deed Records of Hamilton County, Texas. Grossenbacher testified positively that the tracts adjoin and "hang together" and that he was familiar with them as they lay on the ground. No witness testified to the effect that the 230 acres in question could not be definitely located by the description in the written instruments referred to, nor are there any facts or circumstances in evidence tending to establish such a fact. See Dunlap v. Wright, Tex. Civ.App., 280 S.W. 276, point 6 on page 279. No issue was tendered by pleading or proof that the Gas Division Order and Operating Agreement was void, or that it was executed as a result of fraud, accident or mistake. On the contrary, we think the evidence discloses that all of the parties entered into the unitization agreement in good faith.

In Clayborn v. Gambill, Tex.Civ. App., 87 S.W.2d 508, 510, writ ref., we find this statement of the rule: "We gather from the briefs of the parties to this appeal that the judgment of the trial court was rendered for appellees mainly upon the theory that the description of the land as contained in the deed from Cain Clayborn to Will Rather was insufficient to identify the land, and for that reason no title passed to Will Rather by virtue of such deed. * * * The description in the Will Rather deed as interpreted by this court calls for 50 acres of land on the east end of the 109.4 acres owned at the time the deed was made by Cain Clayborn and the surviving heirs of Ann Clayborn in the I. Baity survey, the beginning point of the 50-acre survey to be at the northeast corner of the 109.4-acre tract. With this information and the further fact that the 109.4 acres is in the form of a parallelogram, the rule is that the courts will construct a survey of the designated acreage by lines drawn parallel to the designated line or lines of the 109.4-acre tract. 14 Tex.Jur. § 238, p. 1032. * * * A well-settled rule of construction requires an interpretation under which the deed will be valid and operative in preference to one which will nullify it; and another equally as well-settled rule is that the language of the deed is the language of the grantor, and if there is any doubt as to its construction, it should be resolved against the grantor. Curdy v. Stafford, 88 Tex. 120, 30 S.W. 551."

The rule applied in Clayborn v. Gambill, supra, was also applied by the Commission of Appeals in Woods v. Selby Oil & Gas Co., 12 S.W.2d 994. See also cases there cited. In Pierson v. Sanger, 93 Tex. 160, 53 S.W. 1012, 1013, we find this statement of the rule: "It is the duty of the court to so construe the deed of trust as to give effect to the intention of the parties, if that intention can be legally ascertained." The foregoing cases, when viewed in the light of the facts before us, are not in conflict with the application of the rule made by our Supreme Court in Smith v. Sorelle, 126 Tex. 353, 87 S.W.2d 703, nor with Greer v. Greer, 144 Tex. 528, 191 S.W.2d 848.

In Krider v. Hempftling, Tex. Civ.App., 137 S.W.2d 83, 85, no writ history, we find this statement of the rule:

"* * * a deed will not be declared void for uncertainty of description if it is possible by any rules of construction to ascertain from the description, aided by extrinsic evidence, what property it is intended to convey. Rhoden v. Bergman, Tex.Civ.App., 75 S.W.2d 993.; 8 R.C.L. page 1074. * * * In 14 Texas Jurisprudence, page 989, it is said: 'The rule generally for determining the sufficiency of description contained in a deed is that if there is enough to enable a party familiar with the locality to identify the premises intended to be conveyed, to the exclusion of others, it will be sufficient. It is enough that the description points out and indicates the premises so that by applying it to the land it can be found and identified.'"

In Benton v. Martin, Tex.Civ.App., 244 S.W.2d 930, 931, 933, no writ history, we find this statement of the rule: "A deed is not void for uncertainty unless on its face the description cannot by extrinsic evidence be made to apply to any definite land. The Supreme Court, in Hermann v. Likens, 90 Tex. 448, 39 S.W. 282, 284, held that 'Without giving field notes or boundaries, or referring to other conveyances which contained such description, a tract of land may be so definitely pointed out that it may be unmistakably identified', and 'Between the owner and his grantee, if from the facts given in the description in the deed the property intended to be conveyed can be identified with certainty, it is sufficient.' If there is data in the deed from which the description may be made certain, it is sufficient. Porch v. Rooney, Tex.Civ.App., 275 S.W. 494, error refused. As stated in Caddell v. Lufkin Land & Lumber Co., Tex.Com.App., 255 S.W. 397, this is especially true where the party dealing with or interested in the land knew its location within the larger tract of which it is a part. When the land intended to be conveyed can be identified by the aid of extrinsic testimony, the deed is not void, especially where the possession by the several parties of a definite tract is shown. Folmar v. Thomas, Tex.Civ.App., 196 S.W. 861. If the words used in the description in a deed are uncertain, resort may be had to the construction given them by the parties themselves, and where they have given same a practical construction. and made them applicable to certain property, this will be a strong circumstance in ascertaining their intention. Miller v. Hodges, Tex.Com.App., 260 S.W. 168."

In Battle v. Wolfe, Tex.Civ.App., 283 S.W. 1073, 1077, opinion dated April, 1926, writ ref., we find this statement of the rule: "If there is data from which the description may be made certain, it is sufficient. * * * And this is especially true where the party dealing with or interested in the land knew its location within the larger tract of which it is a part. * * * Although the description is uncertain and ambiguous, if the land intended to be conveyed can be identified by the aid of extrinsic testimony, the deed is not void, especially where the possession by the several parties of a definite tract is shown."

In Miller v. Hodges, Tex.Com. App., 260 S.W. 168, 170, Judge German expressed the rule in this manner: "'The sole purpose of a description of land, as contained in a deed of conveyance, being to identify the subject-matter of the grant, a deed will not be declared void for uncertainty if it is possible, by any reasonable rules of construction, to ascertain from the description, aided by extrinsic evidence, what property it is intended to convey.' * * * It is also a well-established principle that, if the words used in the description of a deed are uncertain, resort may be had to the construction given them by the parties themselves; and, where they have given same a practical construction and made them applicable to certain property, this will be a strong circumstance in ascertaining their intention. * * * The gravamen of plaintiffs' contention is that the description is insufficient and the lease by the Millers was inoperative to pass the legal title to the minerals because the state and county where the lands are situated are not given. It may be stated, we think, as a well-settled proposition that if the deed or written instrument furnishes other sufficient means of identifying the property conveyed, the fail-

ure to state the town, county, or state where the same is situated will not make the instrument void or inoperative."

As we have previously stated, no issue was tendered by pleading or proof that the description of the 230 acres in the unitization agreement out of the Julius Reinert tract was indefinite or insufficient to bind him and his wife. On the contrary, the evidence is without dispute that all of the parties were satisfied with the description of the various tracts in the unitization agreement until gas was produced in paying quantities on the Otto Reinert tract. Mr. Grossenbacher testified in part:

"Whenever we got one of these leases we made him sign the unitization."

Otto Reinert testified in part:

"Q. Now, about this Gas Division Order, what was said to you by Mr. Grossenbacher about the delivery of that instrument to him before all signed it. A. Well, he said that we would all have to sign that division order so that he could drill a well.

"Q. Did he agree or not, or did he not agree, to go and get everybody who was interested in this block to sign it? A. Yes. * * *

"Q. You delivered it to Mr. Grossenbacher, who is the lessee named in the instrument, you and your wife signed and delivered this instrument, which is defendant's exhibit 3, at that time you delivered it to Mr. Grossenbacher? A. Yes.

"Q. And you intended it to be a valid instrument if all the land owners signed it? A. If everybody in that block did, if everybody would sign it, it would be legal, and if they didn't there was a legal cog missing.

"Q. And that is the way you left it? A. Yes, sir."

It is our view, under the undisputed record and the foregoing authorities, that the description of the 230 acres out of the Julius Reinert tract is sufficient to bring it within the rules of construction laid down by our courts as hereinabove cited, and it necessarily follows from what we

have said that the consolidated area is sufficiently described in the Gas Division Order and Operating Agreement. See also Cook v. Smith, 107 Tex. 119, 174 S.W. 1094, 3 A.L.R. 940; Hervey v. Edens, 69 Tex. 420, 6 S.W. 306; Miller v. Pullman, Tex.Civ. App., 72 S.W.2d 379, er. ref.; Taffinder v. Merrell, 95 Tex. 95, 65 S.W. 177. See also 14 Tex.Jur. sec. 323, p. 1015, Title Deeds.

■ From what we have said it necessarily follows that we think Point 1 must likewise be sustained. Such point is supported by Veal v. Thomason, 138 Tex. 341, 159 S.W.2d 472; Brown v. Smith, 141 Tex. 425, 174 S.W.2d 43; Clark v. Elsinore Oil Co., 138 Cal.App. 6, 31 P.2d 476; Andrews v. W. K. Co., 35 Cal.App.2d 41, 94 P.2d 605; Parker v. Parker, Tex.Civ. App.1940, 144 S.W.2d 303, writ ref.; French v. George, Tex.Civ.App., 159 S.W. 2d 566, writ ref.; Garza v. DeMontalvo, 147 Tex. 525, 217 S.W.2d 988; Perry v. Venable, Tex.Civ.App.1940, 112 S.W.2d 1069, writ ref.; Superior Oil Co. v. Dabney, 147 Tex. 51, 211 S.W.2d 563; Board of Insurance Commissioners v. Great Southern Life Ins. Co., Tex.Sup., 239 S.W.2d 803; Indemnity Ins. Co. of North America v. W. L. Macatee & Sons, 129 Tex. 166, 101 S.W.2d 553.

■ We are of the further view that the doctrine of estoppel is applicable to appellees Otto Reinert and wife, as stated in appellants' Point 2. Our view is that since Otto Reinert and wife executed the Gas Division Order and Operating Agreement and by so doing made the same effective and proceeded to cooperate with all of the other parties thereto until the time came to divide the money accumulating and accruing to the parties under such unitization agreement by virtue of the production and saving of the gas produced therefrom, that such conduct estopped them from denying every fact recited in the Gas Division Order and Operating Agreement; that they are estopped to deny the ownership of the Kuklies and the Julius Reinerts to the land set after their names, and they are likewise estopped to deny that the lands making up the consolidated area are contiguous, and

they are necessarily estopped to deny that the Kuklies and the Julius Reinerts are entitled to share in the gas royalty produced from the well located on the 195-acre tract. This view is supported by Parker v. Campbell, 21 Tex. 763; Elliott v. Langham, Tex.Civ.App., 60 S.W.2d 287, no writ history; Burk v. Turner, 79 Tex. 276, 15 S.W. 256; Cope v. Blount, 99 Tex. 431, 90 S.W. 868; Henderson v. Book, Tex.Civ.App., 128 S.W.2d 117, writ ref.; Havard v. Smith, Tex.Civ.App., 13 S.W.2d 743; Ludtke v. Houston Lumber & Building Co., Tex.Civ.App., 5 S.W.2d 802, writ ref.

From what we have said it follows that the judgment of the trial court wherein it found and held that the Gas Division Order and Operating Agreement dated February 8, 1944 was insufficient in law to create a unit or a pooling agreement for the property described therein must be reversed and rendered. Accordingly, the judgment in that respect is reversed and judgment is here rendered that said agreement is in all things valid and binding on the parties thereto, and judgment is further here rendered that Julius Reinert and wife, Minnie Reinert, and Walter Kuklies and wife, Eline Kuklies, be allowed to share in the proceeds of the gas produced and saved from the land of Otto Reinert and wife, Dora Reinert, according to the terms and provisions of the unitization agreement.

Inasmuch as no error is assigned to the other awards made in the decree, said judgment is in all other things affirmed.

Accordingly, the judgment is hereby reversed and rendered in part, as above indicated, and in all other respects is affirmed.

Affirmed in part; reversed and rendered in part.

HALE, Justice (concurring).

I concur in the reversal and rendition of the judgment, as indicated in the opinion written by Justice TIREY. However, I do not think it is necessary to determine on this appeal whether the 635 acres covered in the "pooling agreement", or the 230 acres owned by Julius Reinert and wife, was or was not sufficiently described to render the instrument valid as a conveyance of an estate in all or any part of the lands therein referred to, because it appears to me that under the undisputed evidence in this case the owners of the three tracts of land are conclusively estopped *inter sese* from denying the validity or the binding force and effect of the instrument as a proper basis for correctly dividing the funds tendered into the registry of the court below by Lone Star Gas Company through its bill of interpleader.

McDONALD, Chief Justice (dissenting).

This case was originally filed by the Lone Star Gas Company as a Bill in Interpleader to determine to whom certain royalty payments on gas produced from lands in Hamilton County should be paid.

Appellant Kuklies and wife own a *210* acre tract; Appellant Julius Reinert and wife own a *280* acre tract; Appellee Otto Reinert and wife own a *195* acre tract. The lands of each of these 3 owners is adjacent to the land of at least one of the other 2 owners.

Each landowner executed a separate oil and gas lease on the acreage of his particular land as above noted, adequately describing same.

The leases from Otto Reinert and wife, dated 15 June 1944, and from Julius Reinert and wife, dated 8 December 1942, were to Rudolph Grossenbacher; the lease from Kuklies and wife, dated 8 February 1944 was to L. E. Sumner.

Kuklies and wife on 8 April 1944 transferred to L. E. Sumner one-half of the royalty produced from their land.

On 17 March 1945 Sumner transferred his lease to Grossenbacher.

Grossenbacher transferred the Julius Reinert lease to W. H. Read by instrument dated 12 December 1942 and was by Read transferred back to Grossenbacher by instrument dated 25 March 1945.

Grossenbacher assigned all three leases to H. W. Snowden on 5 November 1945.

Otto Reinert and wife, Julius Reinert and wife, Kuklies and wife, L. E. Sumner, as *Lessors*, and Grossenbacher as *Lessee*, joined in the execution of an instrument

denominated "Gas Division Order and Operating Agreement" which recited that it was entered into on *8 February 1944.* The instrument was acknowledged by L. E. Sumner on 2 April 1945; by Kuklies and wife on 8 February 1944; by Julius Reinert and wife on 26 July 1945; and by Otto Reinert and wife on 20 and 23 April 1945, respectively.

This instrument which I will hereafter refer to as the "pooling agreement" recites among other things:

"Whereas Lessors own in severalty the tracts of land opposite their names and Lessee is the owner of the oil and gas leases covering all of said tracts of land, towit:

| Name | Description | Acres |
|---|---|---|
| Walter Kuklies & Wife and L. E. Sumner | Waller & Barnes Survey | 210 |
| Otto & Dora Reinert | Same land in deed 1 January 1924, Henry Reinert to Otto Reinert, Vol. 93, p. 23 Deed Records | 195 |
| Julius Reinert & Wife | Part James Montgomery & Wm. R. Barnes Surveys | 230 |

"The above land being situated in Hamilton County, State of Texas and containing a total of —— acres to be hereinafter collectively designated as the 'Consolidated area'."

(The instrument further recites that for the purpose of oil and gas production the lands are pooled and that royalties accruing from gas produced anywhere in the consolidated area will be divided among and paid to Lessors in the proportion which the acreage owned by each respectively in the consolidated area bears to the total acreage of the consolidated area).

A well was drilled on the Otto Reinert 195 acres in latter 1945 and completed as a gas well.

Lone Star Gas Company, purchaser of the gas, filed its Interpleader to find out to whom to pay the royalties.

Appellees, Otto Reinert and wife, answered and filed a *cross action which was in Trespass to Try Title for the specific 195 acre tract.* The case was tried before a jury. Based on the verdict of the jury the court rendered judgment, the pertinent provisions of which on this appeal are:

1) Otto Reinert and wife are entitled to the title and possession of all minerals in and under the 195 acre tract (subject to mineral leases outstanding).

2) The instrument called Gas Division Order and Operating Agreement is insufficient in law to create a unit or pooling agreement.

Motions for new trial were overruled and appellants appeal.

Appellants seek to reverse the trial court on Five Points. These may be summarized to the effect that Appellants contend that the Gas Division Order and Operating Agreement is a valid pooling agreement and should be enforced. Appellants cite many cases to the effect that pooling agreements are valid and will be enforced as such in proper cases. With the above I agree, but point out that the problem in this appeal is not "can it be done", but, "was it done".

The question here is whether appellees Otto Reinert and wife are entitled to all of the royalty from the gas well, *or* are appellants entitled to share in the royalty on an acreage basis as provided in the "pooling agreement". To answer, it must be determined if the "pooling agreement" is valid. The validity of the "pooling agreement" depends on whether or not the consolidated area consisting of 635 acres is sufficiently described in the pooling agreement itself, or by reference to other instruments, as to be made certain.

The description in the pooling agreement itself is inadequate. Can it be made certain then by reference to the leases recited as belonging to Grossenbacher? The "pooling agreement" recites that *"lessee (Grossenbacher) is the owner of oil and gas leases covering all of said tracts of land."*

Upon examination of the dates of the various instruments in evidence, we find that if 8 February 1944, the date given in the "pooling agreement" is the correct date of execution (and there is no proof of any other date except the date of acknowledgments), at which time the recitals in it are to be taken as true, we see that Grossenbacher at that time owned no leases from either Julius Reinert, Otto Reinert, or Kuklies. If the date when the parties acknowledged, is taken as the true date of the instrument, we find that only the Kuklies acknowledged on its date, 8 February 1944, and on that date Grossenbacher did not own the Kuklies lease.

Hence the recital "Lessee is owner of the oil and gas leases covering all of said tracts of land" is not true and can add nothing to the definiteness of the description because Grossenbacher owned none of the leases on 8 February 1944, the date of the "pooling agreement"; he did not acquire the Otto Reinert lease until 15 June 1944; he did not own the Kuklies lease; Mr. Sumner owned it. He did not own the Julius Reinert lease; Mr. Read owned it.

Appellant contends the description of the land is made definite by the description of the land given in the leases, but to find out *what* lease was meant we would have to go beyond the instrument itself. We would have to have parol testimony that while Kuklies lease was to Sumner, it was intended that Sumner would transfer it to Grossenbacher, and that *this* lease was the lease that was intended to be mentioned in the pooling agreement.

Then we would have to have parol testimony that the lease from Julius Reinert and wife had been transferred to Read, *but* that it was the intention of Grossenbacher to have Read reassign it to him.

I do not believe that these leases can be looked to, to make definite the descriptions of the various lands sought to be covered by the "pooling agreement."

Even were it possible to utilize the various leases in evidence to attempt to make certain the land sought to be pooled, these still fail to make certain which *230* acres of Julius Reinert's *280* acre tract was intended to be pooled. Appellant contends that there is sufficient description of the 230 acres, for the requirement is, that the pooled area must be contiguous acreage, and that, it therefore, would be the 230 acres of the 280 acre tract which was contiguous to the remaining acreage in the consolidated area.

I do not agree with appellants' contention.

Then, there is no way to know that Otto Reinert would have been entitled to $^{105}\!/_{635}$ of the royalty, had the well been drilled on Julius Reinert's land. There is no way to know if a well on Julius Reinert's land were *on* or *off* the 230 acres, sought to be pooled. Appellants' case does not stand up under the test of mutuality.

The law is well settled in Texas that Oil and Gas in place under land are regarded as real estate and that conveyances of same are subject to the same rules governing the conveyance of real estate. Smith v. Sorelle, 126 Tex. 353, 87 S.W.2d 703. It is likewise well settled that the description of the land must be so definite and certain upon the face of the instrument itself, or by other writing referred to, that the land can be identified with reasonable certainty. Norris v. Hunt, 51 Tex. 609; Greer v. Greer, 144 Tex. 528, 191 S.W.2d 848, citing numerous authorities. It is further the law that while the deed itself need not contain all the identifying descriptive matter—if other descriptive matter be brought into the deed, the *reference to them must be made with certainty, and nothing can be left to doubtful inference.* Davis v. Kirby Lumber Co., Tex.Civ.App., 158 S.W.2d 888, W/E Ref.Want Merit.

Applying the rules laid down, it is my conclusion that the lands sought to be pooled are not described in the pooling

agreement itself, or by other writings referred to therein, so that they can be identified with reasonable certainty. It follows that the "Gas Division Order and Operating Agreement" is insufficient in law to create a valid pooling agreement. It is my conviction that the judgment of the trial court should be affirmed.