**MID–STATES HOMES, INC., Appellant,**

v.

**Joe JONES, Jr., et al., Appellees.**

**No. 3889.**

Court of Civil Appeals of Texas.

Waco.

June 29, 1961.

Rehearing Denied July 19, 1961.

T. B. Bartlett, Jr., Marlin, for appellant.

Robert G. Carter, Marlin, for appellees.

TIREY, Justice.

The action is one in trespass to try title. Defendants entered a plea of not guilty, and followed said plea with a general denial. The cause was tried without the aid of a jury and at the conclusion of the evidence the court decreed that plaintiff take nothing by its suit and it adjudged all costs against it. Plaintiff, in open court, gave notice of appeal to this court, and has duly perfected its appeal.

Plaintiff went to trial on its first amended original petition and pertinent to this discussion alleged that on the 11th day of July 1959, plaintiff was the owner in fee simple of a tract of land in Falls County, Texas, described as follows:

"A certain lot in the Oltorf Addition of Marlin, Falls County, Texas, and being recorded in the City Hall at Marlin, Falls County, Texas, and said lot being in Block No. 7 of said addition and being north of Roosevelt Street south of the City of Marlin and being West of the Sally Dunbar property, said property is about 52 x 150 feet in size, and more particularly described as being a piece or parcel of land situated in Falls County Texas, in the City of Marlin and being Lot 16 in Block 7 of the L. E. Oltorf Addition #2 to the City of Marlin, Texas.

"Being more particularly described as follows:

Beginning at a point in the West line of Craig St., 12 ft. North and 19 ft. east of a one story white frame house built for Joe Jones, Jr., and Della Jones;

Thence S. 50 ft. with the west *lien* of Craig St., to corner;

Thence W. 150 ft. to corner;

Thence N. 52 ft. to corner;

Thence E. 150 ft. to place of beginning."

That plaintiff was in possession of the premises and that afterwards on the 15th day of July 1959, defendants unlawfully entered upon and dispossessed it of the premises and withheld possession from the plaintiff. It prayed for appropriate relief. Plaintiff tendered for evidence the following instruments: (1) A Mechanic's and Materialman's lien contract executed by Joe Jones, Jr., and Della Jones, (his mother) a feme sole, under date 30th day of November, 1957. The property therein described is as follows:

"A certain lot in the Oltorf Addition of Marlin, Falls County, Texas, and being recorded in the City Hall at Marlin, Texas, and said lot being in Block No. 7 of said addition and being North of Roosevelt Street south of the city of Marlin, and being west of the Sally Dunbar property. Said property is *abou* 52 x 150 feet in size."

This instrument bound the Joneses to pay defendant Jim Walter Corporation the sum of $1,716 in 60 monthly installments of $28.60 each, the first installment being due and payable on or before January 15, 1958; (2) A deed of trust by Joe Jones and his mother, Della Jones, to Jacob S. Sipple, Trustee, of Houston, Texas, on the same property described in the foregoing mechanic's lien contract. This instrument bears date the 30th day of November 1957; (3) An installment mechanic's lien note in the sum of $1,716, dated November 30, 1957, due and payable in 60 monthly installments as heretofore stated, and recites that it is secured by the property heretofore described; (4) Transfer of the note and lien from Jim Walter Corporation to Mid-State Investment Corporation—this transfer dated the 26th day of December 1957, and recorded in the mechanic's lien records of Falls County; (5) An assignment from Mid-State Investment Corporation to the Mid-State Homes, Incorporated, dated the 23rd day of January 1959, which assigns the note and Mechanic's lien heretofore referred to; (6) A resignation of Jacob S. Sipple as trustee and the appointment of Orville M. Jobe, as substitute trustee, under the deed of trust heretofore referred to; (7) Trustee's Deed dated the 7th day of July 1959, which recites the sale of the property heretofore referred to under the deed of trust to Mid-State Homes, Inc., and conveys the property heretofore set out; (8) A plat offered in evidence, which plat was made by Ernest Fletes III, County Surveyor, Falls County. When the foregoing exhibits were offered in evidence, appellees objected to them: " * * * first, that each of these exhibits is void because the description of the property contained therein is so defective that the property cannot be located on the ground; and, secondly, that the description of the property contained in these exhibits is at variance with the property sought to be recovered by the plaintiff under his first amended petition." The court said: "It appears to the Court at this time that there is a variance, without a doubt. Now what is the effect of that on introducing evidence?" The Court: "I am inclined to sustain the objection to the admissibility of the evidence. If you don't have but two or three witnesses, I will withhold the ruling and hear the evidence." At the conclusion of the evidence, the court sustained the objection and the exhibits tendered were not admitted in evidence. Defendant Joe Jones, Jr., testified to the effect that he and his mother lived in the Oltorf Addition, and that they lived on a lot west of the Sally Dunbar property, and that it is north of Roosevelt Avenue, and that it is south of Marlin, and that he thought the property was 52 feet by 150 feet; that in January, 1957, there was a house built on the lot; that it was a one story frame house built by Jim Walter Corporation. Attorney for defendants admitted the execution of each of the instruments tendered by Joe and Della Jones. Joe further testi-

fied that nobody showed them where to build the house; that there was a sign on the gate and he thought his uncle told them where to build it. And he told them:

"A. * * * I told them where it would be at.

"Q. You did? A. Yes.

"Q. You and a representative of Jim Walter Corporation agreed on the site where the house would be built? A. On the site? I don't understand.

"Q. You didn't want them to build a house on somebody else's property, did you? A. No.

"Q. You showed them where the property was? A. No.

"Q. Is there anybody in that area west of the Sally Dunbar property that owns a lot 52 feet besides you? A. I don't know, really sir.

"Q. You don't? A. No, sir, I don't.

"Q. But you do own property in that location? A. Yes, sir.

"Q. Do you render it for taxes? A. What do you mean by that?

"Q. Have you ever rendered it for taxes? A. I don't understand.

"Court: Do you pay taxes on it? A. We haven't paid none in the last few years.

"Q. The house was built and it met with your approval, did it not? Did they built a house there for you? A. Yes, sir, they built a house.

"Q. And they built it where you told them to? A. Well, yes, sir, they built it where the sign was.

"Q. I will ask you this, do you and your mother still live there now? A. Yes, sir.

"Q. Have you paid off the note that you signed to the people that built the house for you? A. No, sir.

"Q. You still owe it? Did they send you a notice they were publishing it for sale?

"Mr. Carter: In the interest of time, I don't know what the purpose of all this is, but we will stipulate it all, if you will tell us what you are trying to prove.

"*Mr. Bartlett: Will counsel stipulate Joe Jones and a member of Jim Walter Corporation designated the place to build the house; they built the house; he signed the note; and the notes were not paid?*

"*Mr. Carter: We surely will.*" (Emphasis added.)

Mr. Ernest Fletes, III, testified to the effect that he was County Surveyor of Falls County; that in August 1959 he made a survey of some property belonging to Joe and Della Jones. "A. No, I don't know that. They did—they lived in the house." That he made a survey of the lot and house where Joe and Della lived in the Oltorf Addition; that the property he surveyed was in the Oltorf Addition; that it was north of Roosevelt Street; that it was south of the city of Marlin; that it was west of the Sally Dunbar property, and he made a map of his survey showing the property and it was marked for identification; that the map shows a one story frame house and at the time the survey was made Joe Jones' mother was there; that Joe was somewhere in west Texas. He further testified in part:

"Q. Ernest, where did you get the map of Block 7 that you made that map from of the L. E. Oltorf No. 2 Addition? A. I got that map out of the tax office down stairs.

"Q. The Tax Collector's office? A. Yes. * * *

"Q. From the map you got in the Tax Collector's office, thought, you did make this map, is that right? A. I

would just like to say I went out there and located the house. I didn't have no deed or nothing like that. They just asked me to locate the house on the ground and tie it in to the addition. And that is what I did.

"Q. Your map is correctly drawn, as shown on Exhibit '8'? A. According to the way it was on the ground, and the way it is in the Tax Collector's office, yes?

\* \* \* \* \* \*

"Q. Ernest, did you have any field notes to go by when you went out there to make that plat? A. The only field notes I had were those the attorney sent me that had that description. I believe you have the same ones—north of Roosevelt, west of Dunbar, a lot in block 7 south of the City of Marlin.

"Q. They told you to go down to the Jones residence and measure a lot, didn't they? A. Yes.

"Q. From the description contained in plaintiff's exhibit '1', which says, 'a certain lot in the Oltorf Addition of Marlin, Falls County, Texas', if they didn't tell you to measure the Jones yard, with that description, would you know what Oltorf Addition to go to? A. No, I wouldn't.

"Q. Now assuming you picked out an Oltorf Addition that contained a Block 7, or one of the same size as the Block 7 referred to in the L. E. Oltorf Second Addition in Plaintiff's first amended petition, could you locate a lot 52 ft. by 150 ft. within that block? A. Yes, sir.

"Q. From this description? A. I could in that block.

"Q. Do you know the dimensions of Block 7 of the L. E. Oltorf Second Addition? A. Of the whole block?

"Q. Yes. A. I don't remember off hand.

"Q. Ernest, let's assume, for the record that Block 7 is 300 square feet, and you are to locate a lot 52 feet x 150 feet in size in that block. That lot could be located in any of approximately six different locations in the block, couldn't it? A. Yes, sir.

"Q. And from a description 52 feet by 150 feet in size, with no point or corner to tie to, that lot could be shifted anywhere in the block at will, could it not? A. 52 x 150—usually the first number is the width.

"Q. I have a square here. But we could locate that lot anywhere in the block. We could put it where it was not touching any boundaries. You could locate a lot 52 by 150 anywhere. You could shift it into any number of positions, couldn't you? A. Yes, sir, according to that description.

"Q. And you couldn't go on the ground and definitely tie that floating 52 feet by 150 feet to any point in that block without some additional description as to where it was located, could you? A. Like I said, I located it according to the plat in the Tax Collector's office. And it showed it. That is the only way I located it.

"Q. But you could locate it from the description contained in these exhibits, could you? A. No sir, I couldn't.

"Q. It couldn't be located at any particular point in that block, could it? A. Not from that description it couldn't.

"Q. That is all.

"By Mr. Bartlett:

"Q. Did Joe Jones or Della Jones own any other property down there? A. I couldn't answer that. I only know they lived in that house. I don't know whether they owned any other land in there or not.

"Q. You did survey the lot on which their house is located, is that right, Ernest? A. That is right."

Does the record here made furnish within itself or by reference to some other existing writing the means or data by which the 52 x 150 foot tract referred to in the exhibits can be identified within reasonable certainty? We think it doubtful. In Hoover v. Wukasch, 152 Tex. 111, 254 S.W.2d 507, 510, Supreme Court, we find this statement of the rule:

"The rule is now well settled that a writing will be held sufficient in this particular if it furnishes 'within itself, or by reference to some other existing writing, the means or data by which the particular land to be conveyed may be identified with reasonable certainty.' * * * 'a description of land sold as that which the purchaser or a third person is in possession of or as that on which one of the parties resides has been held sufficient to satisfy the statute.' See also cases cited in Annotation in 23 A.L.R.2d 6, 61–64."

See also Maupin v. Chaney, 139 Tex. 426, 163 S.W.2d 380; Kuklies v. Reinert, Tex. Civ.App., 256 S.W.2d 435, point p. 441, n. r. e.

In Miller v. Hodges, Tex.Com. App., 260 S.W. 168, 170, Judge German expressed the Rule in this manner:

" 'The sole purpose of a description of land, as contained in a deed of conveyance, being to identify the subject-matter of the grant, a deed will not be declared void for uncertainty if it is possible, by any reasonable rules of construction, to ascertain from the description, aided by extrinsic evidence, what property it is intended to convey.'

"This general rule has been many times stated by our courts. The extrinsic evidence which is admissible must not be for the purpose of adding to or modifying the description contained in the deed, but is for the purpose of explaining the calls in the deed and applying them to the subject-matter, and thus give effect to the deed. The general rule may be stated in this way: The description in a deed or contract, while it need not in itself fully and definitely identify the property conveyed, must contain sufficient particulars to afford or point out the means whereby identification may be completed by parol evidence.

"(3) In 18 C.J. 277, this rule is announced:

" 'The intent of the parties, as manifested by the language of the deed, will, as a general rule, control in determining the property conveyed, and in case of ambiguity or uncertainty the language of the description will be liberally construed in order to effectuate, if possible, such intention.'

\* \* \* \* \* \*

" 'When all the circumstances of possession, ownership, situation of the parties, and their relations to each other and the property, as they were when the negotiations took place and the writing made, are disclosed, if the meaning and application of the writing, read in the light of those circumstances, are certain and plain, the parties will be bound by it as a sufficient written contract or memorandum of their agreement.' " See point 4, page 171 of 260 S.W.

In Kuklies v. Reinert, supra, we find this statement:

" '* * * If call for adjoinder is made through mistake, general rule that such call is given controlling effect overcall for course and distance is not applicable, but it does not always follow that course and distance call will control, and court is left free to construct survey in such manner as will

best give effect to intention to be determined from entire description.'

\* \* \* \* \* \*

" 'A deed is not void for uncertainty unless on its face the description cannot by extrinsic evidence be made to apply to any definite land. \* \* \*

" 'When the land intended to be conveyed can be identified by the aid of extrinsic testimony, the deed is not void, especially where the possession by the several parties of a definite tract is shown. \* \* \*' " [256 S.W.2d 442.]

■ Appellant's second point is to the effect that since appellees executed the instruments and designated the place where the house was to be erected, and since appellees proceeded to occupy the house built by appellant, they are estopped to claim that the description in the instruments is not sufficient. We sustain this contention. It was stipulated that appellees were the common source of title to the property involved in this suit. There was no sworn denial of the signing of the instruments in suit, and appellees, through their counsel, admitted the execution of them all.

It was stipulated: "Joe Jones and a member of Jim Walter Corporation designated the place to build the house; \* \* \*"

In Patterson v. Patterson, Tex.Civ.App., 27 S.W. 837, 838, (1894 writ denied), we find this statement of the Rule:

"A deed with a defective description may, by the acts and declarations of the grantor, when acted upon by the vendee, be cured of its vice by acts of ratification and recognition, which in equity may estop the grantor from denying that the instrument conveys title. Coker v. Roberts, 71 Tex. [597] 603, 9 S.W. 665."

In First State Bank of Riesel v. Dyer, Tex.Civ.App., 248 S.W.2d 785, 788, (af-

firmed by Supreme Court 151 Tex. 650, 254 S.W.2d 92) we find this statement of the Rule:

"The broad concept embodied in the doctrine of estoppel is that a person who by his speech or conduct has induced another to act in a particular manner, ought not to be permitted to adopt an inconsistent position, attitude or course of conduct to the loss or injury of such other."

■■ In this cause the evidence is without dispute that the Joneses were living in a house located on a tract of land 52 x 150 feet west of Sally Dunbar place, and north of Roosevelt Street in the southern part or south of Marlin, Texas. Della Jones was in the house built by the Jim Walter Corporation located on the property where Joe Jones said: "I told them where it would be at." The evidence is without dispute and certain that Della Jones was living in a house built by the Jim Walter Corporation at the time the county surveyor made his survey and field notes to the property, and since Della and her son Joe executed all the papers required to secure this loan, and did not pay therefor, and since the exhibits tendered show that the sale of the property was made under the deed of trust, and since Della and Joe are the common source of title, we are of the view that the sale of the property under the deed of trust is sufficient to pass such title as Della and Joe had in and to this property. We also think that the description shown in each of the eight exhibits, together with the extrinsic evidence offered under this record, is sufficient for them to be admitted in evidence. We are of the further view that the court erred in excluding each of these exhibits, and being of this view, it is our duty to reverse and remand this cause with instruction to the trial court to admit each of the exhibits in evidence, and to render judgment for title and possession of the property in favor of appellant.

Reversed and remanded with instructions.